**Maria ALMENARES et al., Plaintiffs,**

**v.**

**George K. WYMAN, Commissioner of Social Services for the State of New York, individually and in his official capacity, and Jule Sugarman, Commissioner of Social Services for the City of New York, individually, and in his official capacity, Defendants.**

**No. 71 Civ. 3503.**

United States District Court,
S. D. New York.

Nov. 3, 1971.

Henry A. Freedman, Steven J. Cole, Center on Social Welfare Policy and Law, New York City, for plaintiffs; Lorenzo Casanova, Bronx Legal Services, New York City, Gerald McIntyre, Bronx, of counsel.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, Stephen P. Seligman, A. Seth Greenwald, Asst. Attys. Gen., of counsel, for defendant Wyman.

J. Lee Rankin, Corp. Counsel, Yvette Harmon, Asst. Corp. Counsel, New York

## OPINION

PIERCE, District Judge.

Plaintiffs in this action have moved this Court for a preliminary injunction and for an order determining that this action may properly be maintained as a class action pursuant to Rule 23, Fed.R. Civ.P. This suit is brought by recipients of public assistance benefits in the federally-aided program of Aid to Families with Dependent Children (AFDC).[1] The defendants are George K. Wyman, the Commissioner of Social Services of the State of New York, and Jule Sugarman, the Commissioner of Social Services of the City of New York. The plaintiffs assert two claims, one constitutional and the other statutory. The constitutional claim is that defendants have reduced plaintiffs' public assistance benefits without a hearing, or without a hearing sufficient to meet the requirements of the Due Process Clause. The statutory claim is that defendants have failed to implement the federal regulation governing fair hearings upon termination, suspension or reduction of assistance, 45 C.F.R. § 205.10, 36 Fed.Reg. 3034 (1971). Ultimately, plaintiffs seek a declaratory judgment, a permanent injunction, restitution of moneys wrongfully withheld, as well as compensatory and punitive damages to the named plaintiffs and the members of their class. At this stage, the only questions before the Court are whether to issue an order determining that this is a proper class action and whether to issue a preliminary injunction.

The three named plaintiffs in the case are Maria Almenares, Cresencia Garcia, and Janet Rodriguez. Plaintiff Almenares had been receiving an AFDC grant of $120.50 bi-monthly. In a letter dated July 12, 1971, she was informed that her bi-monthly grant would be reduced to $6.35 effective July 16, 1971. The reasons given were that her landlord had

---

[1]. Social Security Act of 1935, 42 U.S.C. §§ 601–610 (1970). As in each of the categorical assistance programs, grants-in-aid are provided by the Federal government to States which choose to administer programs of assistance created by the Federal statute.

stated that she had not paid rent for part of May, or for June and July. On this ground her rent allowance was subtracted. In addition, her grant was further reduced because she was allegedly receiving $25 a week as support money from her husband. As to the rent, Mrs. Almenares contends that she continued to have an obligation to pay rent, but that she was withholding rent money pursuant to Section 755, N. Y. Real Property Actions and Proceedings (McKinney's Consol.Laws, c. 81, 1963). She also asserts that, but for two $25.00 weekly payments, she had not been receiving support money from her husband. Prior to the actual reduction, Mrs. Almenares was not granted a hearing in which to raise her contentions.

Plaintiff Garcia received notice, dated April 14, 1971, stating that her grant would be reduced as of May 16, 1971, from $117 bi-monthly to $93.60 bi-monthly. The reason for the reduction was that Mrs. Garcia had allegedly endorsed checks which she had claimed were not received. The reduction actually took effect beginning May 1, 1971 and a review was not held until July 9, 1971. The decision upon review was adverse to Mrs. Garcia, but she claims that the nature of the review itself did not afford her due process.

The last named plaintiff, Janet Rodriguez, received notice in the beginning of July advising her that her assistance would be suspended because she had been "working for some time." A later notice stated that her grant would be reduced to $27.45 bi-monthly. Although plaintiff attests that she had not been working and she requested a review to contest the grounds for the reduction, no review was afforded as of the date of the filing of this suit. The reduction took effect, however, as of her check for the first half of August.

The New York City Department of Social Services relies, in each of these cases, on its alleged compliance with 18 N.Y.C.R.R. § 351.26 (1971),[2] the fair hearing rule promulgated by the State,

2. The rule reads, in part, as follows:
351.26 Proposed discontinuance, suspension or reduction of grant; prior notice to recipient; additional local review and subsequent determination. (a) When a social services official proposes to discontinue, suspend or reduce a grant of public assistance he shall notify the recipient in writing of his intention to discontinue, suspend or reduce the grant at least seven days prior to the proposed effective date of the discontinuance, suspension or reduction together with the reasons for his intended action, unless such discontinuance, suspension or reduction is in response to the request of the recipient or is due to: the death of the recipient who is an unattached person; the recipient's admission to an institution wherein his assistance may not be continued; the recipient's whereabouts being unknown to the social services official because the recipient moved from his last known address without notifying the social services official and without leaving a forwarding address; the recipient's moving from the State and establishing his permanent home elsewhere; the recipient's case having been reclassified as to category. Such notification shall further advise the recipient: that if he makes a request therefor, he may appear at the time and place indicated in the notice before the person identified therein who will review his case with him; that at such review he will be afforded an opportunity to question any persons who appear at the review and present evidence against him, that he will be afforded an opportunity to prevent written and oral relevant evidence and argument to demonstrate why his grant should not be discontinued, suspended or reduced; and that he may appear and present such evidence and argument, and ask questions by himself or by an attorney or other representative. Only the social services official or an employee of his social services department who occupies a position superior to that of the supervisor who approved the proposed discontinuance, suspension or reduction, and who had not participated in making the proposed determination under review shall be designated to make such review. When a recipient requests such review, the designated reviewer shall, at the time and place indicated in the notice to the recipient, review with the recipient and his representative, if any, the evidence and reasons supporting the proposed action shall afford the recipient an opportunity to question any persons who appear and present evidence against him; and shall afford the recipient an opportunity to present relevant evidence and argument why the proposed discontinuance, suspension or reduction should not be made. Upon the

as well as Procedure No. 71–21, the City's fair hearing rule. Procedure No. 71–21 delineates eight situations in which assistance may be curtailed without a prior hearing.[3] As to each of the named plaintiffs, the City defendant relies on subsection (g)[4]: "Discontinuance of assistance or reduction of client's budget is mandated by law." For example, as to plaintiff Rodriguez the City states that since a Department regulation requires that income from a job must be deducted from welfare assistance, Mrs. Rodriguez' grant was properly reduced without a prior hearing. The City states that Mrs. Rodriguez' employment was "verified by Alexander's Department Store," and although this plaintiff attests that she did not hold such a job, the City concludes that there was "no question of fact" and the reduction was thus mandated by law. Defendant Wyman's position with regard to these plaintiffs is that the State regulation, 18 N.Y.C.R.R. § 351.26, is not challenged on constitutional grounds and that the State has no duty to supervise the local agency's practices with regard to pretermination hearings.

### I. JURISDICTION

■ Plaintiffs allege that, among other grounds, the jurisdiction of the Court is founded upon 42 U.S.C. § 1983 (1970) and 28 U.S.C. § 1343(3) (1970). In welfare cases such as this one, jurisdiction under § 1343(3) will properly lie so long as a colorable constitutional claim is raised. Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 24 L.Ed.2d 491 (1970); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20

basis of the evidence and argument submitted at the review, the reviewer shall promptly make an appropriate written recommendation to the social services official, together with his reasons therefor, including reference to applicable provisions of law, board rule, department regulation, and approved local policy. The social services official shall expeditiously determine, upon the basis of the recommendation and the evidence and arguments submitted at the review, whether the proposed discontinuance, suspension or reduction shall or shall not be made effective as proposed and shall send an appropriate written notice of his decision to the recipient and his representative, if any, including the reasons for his determination and the evidence he relied on. Assistance shall not be discontinued, suspended or reduced prior to the date such notice of decision is sent to the recipient and his representative, if any, or prior to the proposed effective date of discontinuance, suspension or reduction, whichever occurs later.

3. Procedure No. 71–21(B) (2) states that: Notification must be sent to the client of the intent to reduce, suspend or discontinue assistance at least seven (7) calendar days prior to the planned effective date of such action indicating specific reasons for the proposed action except in the situations listed below. Those specific situations which do not require notification are as follows:

    a. Client has requested reduction, suspension or discontinuance of assistance.
    b. Death of unattached person.
    c. Admission to institution (mental, penal, correctional, etc.).
    d. Client's whereabouts unknown and there is no forwarding address.
    e. Client has left the State permanently.
    f. Reduction of client's budget is on the basis of information supplied by the client.
    g. Discontinuance of assistance or reduction of client's budget is mandated by law.
    h. Reclassification as to category.

Although the rule states only that notification need not be sent in the enumerated instances, the City states in its affidavit that these are also situations in which it is not necessary to grant a hearing before assistance is curtailed. Of course, this is the clear implication of the rule since a pretermination hearing could not be held if prior notice is not given.

4. With regard to Mrs. Almenares' rent, the City relies upon subsection (f), stating that Mrs. Almenares advised the Department of Social Services that she was not paying rent.

In an affidavit submitted almost immediately before the issuance of this opinion and order, the City conceded that if plaintiff Garcia had requested a hearing within seven days, she would have been entitled to a hearing. The City's records did not, however, indicate whether such a timely request had been made.

L.Ed.2d 1118 (1968); Campagnuolo v. Harder, 440 F.2d 1225 (2d Cir. 1971); Johnson v. Harder, 438 F.2d 7 (2d Cir. 1971). The Court finds that the facts as set forth present a colorable constitutional claim under the Due Process requirements for pretermination hearings which the Supreme Court established in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Although *Goldberg* is distinguishable from the present case in that it involved terminations, rather than reductions, of welfare benefits the constitutional claim is colorable nonetheless. In fact, it would appear that the logic of *Goldberg* would extend to reductions of welfare benefits[5], as for example, in the case of Mrs. Almenares where the reduction was so substantial as to create a situation not unlike complete termination. Thus, the Court finds that a colorable constitutional claim was presented and jurisdiction in this case is properly founded upon 28 U.S.C. § 1343(3).

Defendant Wyman seeks to avoid the effect of this determination by asserting that the constitutional claim presented by plaintiffs is based on the local agency's, rather than the State's, actions. Further, defendant Wyman denies an affirmative duty to supervise the local agency's hearing procedures. The plaintiffs assert that defendant Wyman is implicated on the constitutional claim against the City because defendant Sugarman is merely an agent of the State. For purposes of determining this application for a preliminary injunction, the Court finds that under the New York statute defendant Wyman is responsible for supervising defendant Sugarman's conduct and, therefore, the constitutional claim asserted against the City states a claim against the State, as well. The State Department of Social Services is charged with supervising local welfare departments and their officials, N. Y. Social Services Law, § 20(2) (b), (3) (a), (3) (f) (McKinney's Consol.Laws, c. 55, 1966). The State Commissioner is specifically required to exercise general supervision over the local agencies, N. Y. Social Services Law, § 34(3) (d), (e) (McKinney 1966). Furthermore, the Social Security Act requires a State plan to provide for the establishment of a single State agency to administer, or to supervise the administration of the assistance program. 42 U.S.C. §§ 602(a) (3), 1382(a) (3) (1970.) In conclusion, both the State and the federal statutory schemes set forth defendant Wyman's responsibility for defendant Sugarman's conduct and procedures. Plaintiffs have stated a colorable constitutional claim against both defendants and jurisdiction is found to exist as to defendant Wyman, as well as to defendant Sugarman.

Having found that jurisdiction is established under § 1343(3) on the constitutional claim, the Court assumes pendent jurisdiction over the statutory claim. Dandridge v. Williams, 397 U.S. 471, 475–476, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Wyman v. Rothstein, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970) (per curiam); Wilczynski v. Harder, 323 F.Supp. 509, 514 (D.Conn. 1971); Solman v. Shapiro, 300 F.Supp. 409 (D.Conn.1969), aff'd mem., 396 U. S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969).

## II. ADMINISTRATIVE REMEDIES

Defendant Wyman has further argued that the Court should decline to exercise its jurisdiction in this case so as to allow the Department of Health, Education and Welfare (HEW) to resolve the regulatory conflict with the State. Specifically, the State suggests that judicial review would only be available following a conformity hearing pur-

---

5. *See* Goldberg v. Kelly, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970):
Thus the crucial factor in this context * * * is that termination of aid pending resolution of a controversy over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. Since he lacks independent resources, his situation becomes immediately desperate. His need to concentrate upon finding the means for daily subsistence, in turn, adversely affects his ability to seek redress from the welfare bureaucracy.

suant to 42 U.S.C. § 1316 (1970). The Supreme Court rejected this argument in Rosado v. Wyman, 397 U.S. 397, 406, 90 S.Ct. 1207, 1215, 25 L.Ed.2d 442 (1969), noting that "HEW has no procedures whereby welfare recipients may trigger and participate in the Department's review of state welfare programs."

Defendant Wyman seeks to distinguish the present situation from the one before the Court in *Rosado* by citing a recent decision in which welfare recipients were granted the right to intervene in an HEW conformity hearing. National Welfare Rights Organization v. Finch, 139 U.S.App.D.C. 46, 429 F.2d 725 (1970). Regulations issued by HEW subsequent to that decision confirm that welfare recipients may now participate in hearings, if they demonstrate a requisite interest in the proceedings. 45 C.F.R. § 213.15 (1971). This regulation cures part of the difficulty which the Court noted in *Rosado,* namely, welfare recipients may now participate in HEW's review of State welfare programs. However, the other part of the problem considered in *Rosado* remains unremedied. It is still not possible for welfare recipients to "trigger" HEW's review procedure. Perhaps a different case would be presented if HEW had initiated a conformity hearing in this State and it only remained for plaintiffs to file a petition to participate. This is not, however, the situation before the Court. A conformity hearing has not been initiated by HEW, and plaintiffs cannot cause HEW to take such action. In these circumstances, the rationale stated in *Rosado* remains valid and applicable. Therefore, this Court will not decline to exercise its jurisdiction to adjudicate the grievances of these plaintiffs.

### III. CLASS ACTION

Before turning to the merits, the Court will consider the question of whether this case should properly proceed as a class action. Plaintiffs seek to represent all recipients under New York State's programs of Aid to Families with Dependent Children (AFDC) and Aid to the Aged, Blind and Disabled (AABD).

The Court finds that the prerequisites and requirements of Rule 23(a) and (b), Fed.R.Civ.P., have been met. First, it is alleged that there are approximately 1,500,000 recipients of AFDC and AABD benefits in New York State. Joinder of all members of the class would, of course, be impracticable.

Second, questions of law and fact common to the class have been presented. In particular, on the statutory claim, the applicability of the State or federal regulation for fair hearings is a question of law common to the class throughout the State. On the constitutional claim, procedures of local agencies throughout the State are challenged.

Third, the claims of the representative parties are typical of the claims of the class. It appears that these plaintiffs' claims upon reduction of benefits without a State hearing are no different than would be the claims of other welfare recipients throughout the State. The Court also finds no difficulty with the fact that the named plaintiffs are AFDC recipients seeking to represent both AFDC and AABD recipients. The distinctions which lead to different classifications in assistance categories are not distinctions of any bearing upon the legal issues in this case. In sum, the requirement of typical claims has been met.

Fourth, the Court further finds that the named plaintiffs will fairly and adequately protect the interests of the class. Although temporary relief was granted by consent of defendants to each of the named plaintiffs, each continues to have an underlying stake in the issues litigated in this case. Specifically, the temporary relief was granted without a resolution of the City's assertion of ineligibility in each case. Unless this suit were diligently and successfully prosecuted, each could expect to have her grant reduced without further review. Furthermore, the Court takes note of the fact that the attorneys representing plaintiffs in this case are public service legal organizations experienced in litigation of this nature. It may be presumed that they will represent plaintiffs in a fash-

ion that will fairly and adequately protect the interests of the class.

■■ Finally, the Court finds that Rule 23(b) (2) is satisfied in this case in that defendants have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." This requirement is met in that plaintiffs challenge the State's enforcement of a fair hearing regulation which does not comport with the federal fair hearing regulation. This action—the enforcement of the State regulation by the defendants—is taken on grounds generally applicable to the class. Furthermore, a class action may be maintained under Rule 23(b) (2) even though plaintiffs seek money damages in addition to injunctive and declaratory relief. Doe v. Shapiro, 302 F.Supp. 761 (D.Conn.1969), appeal dismissed, 396 U.S. 488, 90 S.Ct. 641, 24 L.Ed.2d 677 (1970); Solman v. Shapiro, 300 F.Supp. 409 (D.Conn.1969), aff'd mem., 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969).

The requirements of Rule 23 have been met, and, accordingly this suit may properly proceed as a class action. In addition to this determination, plaintiffs also seek an order that they may proceed against defendant Sugarman as a class representative of the State's sixty-four local social services commissioners. Although Rule 23 allows suits against defendants as class representatives, the requirements of the Rule are not fully met in this case. On the constitutional claim, the defenses of defendant Sugarman may not be typical of the defenses of the other local commissioners. They may have promulgated regulations and adopted practices quite different from those attacked by plaintiffs in this case. Furthermore, under subsection (b), plaintiffs claim that "separate actions by or against individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members of the class." This,

however, is not a real possibility in this case since the plaintiffs have joined defendant Wyman in the suit and, under his supervisory duties previously detailed, standards set up with regard to defendant Sugarman would become applicable for local commissioners throughout the State. For these reasons, the Court denies plaintiffs' request to proceed against defendant Sugarman as a class representative.

## IV. STATUTORY CLAIM

In order to avoid reaching the constitutional issue unnecessarily, the statutory claim will be considered first. Wyman v. Rothstein, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970) (per curiam); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). The essence of the statutory claim is that the defendants have failed to implement the recently promulgated HEW regulation governing fair hearings, 45 C.F.R. § 205.-10, 36 Fed.Reg. 3034 (1971). Instead, they have continued to follow the New York State regulation[6] which predated the new federal provision.

The two regulations are inconsistent with each other in several respects. The primary difference in dispute here is that the State regulation provides for a local agency hearing before reduction or termination of benefits, while the federal regulation requires that a State fair hearing must be held prior to curtailment of benefits. The State practice has been to provide an informal hearing before a review officer employed by the local agency. The regulation governing this procedure requires timely and adequate notice, an opportunity to be heard and to confront adverse witnesses, the right to be represented by counsel, and a decision setting forth the reasons for the determination. Under the regulation, assistance cannot be curtailed prior to the date on which notice of the decision is sent to the welfare recipient. If the

---

6. *See* note 2, *supra.*

decision is adverse, the recipient can seek review at a State fair hearing, an administrative review specifically required by the Social Security Act, 42 U.S.C. § 602(a) (4) (1970). The State hearing is judicial in nature, rather than informal. It is held before a State official; a record of the proceedings is transcribed; and a formal opinion, including findings of fact, is handed down. Since benefits may be curtailed after the local hearing, the recipient is not receiving the grant which is the subject of dispute during the time he is awaiting his State fair hearing.

In contrast, the federal regulation provides for only one review—the State fair hearing—and assistance must be continued until that review is completed. Thus, the State procedure is at variance with the federal requirement at least to the extent that benefits are altered before the State fair hearing occurs. In adopting the federal regulation, HEW was not unaware of procedures like those in New York State. It, nevertheless, chose the single State hearing requirement, for reasons of economy and impartiality.[7]

It is not disputed that the federal regulation, if valid, is binding upon the State. Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); Boddie v. Wyman, 434 F.2d 1207 (2d Cir. 1970), aff'd mem., 402 U.S. 991, 91 S. Ct. 2168, 29 L.Ed.2d 157 (1971); Solman v. Shapiro, 300 F.Supp. 409 (D. Conn.1969), aff'd mem., 396 U.S. 5, 90 S.Ct. 25, 24 L.Ed.2d 5 (1969). Defendant Wyman challenges the validity of the

regulation on two grounds. First, it is asserted that the regulation conflicts with the Social Security Act's provisions for local administration, 42 U.S.C. § 602 (a) (3) (1970). Second, it is claimed that the regulation goes beyond HEW's rule-making powers, 42 U.S.C. § 1302 (1970).

■ As to the first contention, defendant directs the Court's attention to § 602(a) (3), which reads as follows:

A State plan for aid and services to needy families with children must either provide for the establishment or designation of a single State agency to administer the plan, or provide for the establishment or designation of a single State agency to supervise the administration of the plan.

Defendant's argument is that the statute allows for the option of local administration and, therefore, the federal fair hearing regulation conflicts with this provision because it places the responsibility for the hearing upon the State. As a matter of statutory interpretation, the Court finds this argument to be unpersuasive. It would be necessary to read a great deal into § 602(a) (3) in order to find that it forbids HEW to place a particular responsibility upon the State rather than upon the local agencies. On the face of the statute, the Congressional mandate merely appears to be for the general administration of welfare plans at the local level. This does not forbid the administrative agency from devising regulations which place specific duties upon the State agency. Furthermore, de-

---

7. An HEW memorandum, dated February 13, 1971, set forth the rationale of the single-hearing requirement, as follows:

1. Holding one hearing, rather than a local hearing followed by a State hearing will, in our view, be less costly in time and money.

2. Greater impartiality, objectivity and uniformity in the application of State policies is assured when the hearing is not before the agency that made the decision being appealed.

3. The individual and those appearing on his behalf will be subject to only one hearing.

4. This hearing process is closely akin to that which would be required under the Family Assistance Plan.

5. The State agency should be better able to interpret State policies and to determine whether they were correctly applied to the individual's situation, especially when the claimant challenges the correctness of the local agency's application of those policies.

6. A single hearing can be a means for improving hearing procedures and for shortening the time for the total process which, in some States, now exceeds the Federal standard of 60 days.

fendant cites no authority either in legislative history or judicial interpretation, which supports the reading of the statute presently urged upon this Court. Therefore, the Court concludes that the federal regulation is not invalid on the grounds that it conflicts with the Social Security Act, § 602(a) (3).

■ The second argument against the validity of the regulation is that its promulgation exceeded HEW's rule-making powers. Those powers are delineated in 42 U.S.C. § 1302, as follows:

> [T]he Secretary of Health, Education, and Welfare * * * shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which [the Secretary] is charged under this chapter.

Essentially, defendant Wyman argues that HEW went beyond its rule-making power because it was implementing the Supreme Court's decision in Goldberg v. Kelly, *supra*, rather than the Social Security Act. The Court finds this position to be untenable. Even where a statute does not affirmatively indicate an intent to establish a regulation such as the one in question, if the grant of authority is sufficiently broad, the regulation will be considered to be authorized. Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965). Furthermore it is well recognized that deference must be given to the regulations promulgated by the agency charged with administering a statute. Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); Zemel v. Rusk, 381 U.S. 1, 85 S. Ct. 1271, 14 L.Ed.2d 179 (1965); Conn. State Dept. of Public Welfare v. HEW, 448 F.2d 209 (2d Cir. 1971); Boddie v. Wyman, 434 F.2d 1207 (2d Cir. 1970), aff'd mem., 402 U.S. 991, 91 S.Ct. 2168, 29 L.Ed.2d 157 (1971). Finally, in a recent Second Circuit case, the standard for testing the validity of an HEW regulation was said to be whether the regulation was "unreasonable" and "contrary to the Act." Connecticut State Department of Public Welfare v. HEW, *supra*. Applying those standards here, the Court concludes that the defendant failed to make such a showing and, thus, the federal fair hearing regulation must be deemed valid and binding upon the State.

## V. RELIEF

■ This being the Court's view of the statutory claim, it is unnecessary to go on to consider the constitutional claim. For the purposes of a preliminary injunction,[8] the Court finds that the plaintiffs have demonstrated a probability of success on the merits. As to the requirement of irreparable harm, there can be little doubt that plaintiffs and the class they represent will suffer irreparable harm if an injunction does not issue. Even though the assistance payments withheld herein can be restored to the recipient, the harm caused to an eligible welfare recipient during the period of such termination or reduction is irreparable indeed. For the children of persons eligible to receive AFDC grants, the period of time might well mean deprivation of basic human needs.

Weighed against these possibilities is the potential harm to defendants which in this case constitutes the expenditure of monies. It will not be necessary for defendants to dismantle administrative procedures or to create new ones. The present structure of local and state hearings can be maintained. The defendants must only continue assistance payments during the interim between the local and state hearings.

Plaintiffs' motion for a preliminary injunction is hereby granted. Defendant

---

8. It should be emphasized that the conclusions are made only for the purpose of deciding the motions before us and are not determinative of the merits of the case.

Wyman, his successors in office, agents and employees, and those persons in active concert with them, including local social services officials administering AFDC and AABD programs under State supervision, insofar as said officials have actual notice of this order, and defendant Sugarman, his successors in office, agents and employees, and those persons in active concert with him, are hereby restrained from terminating, suspending or reducing public assistance benefits in the federally-aided programs of Aid to Families with Dependent Children and Aid to the Aged, Blind and Disabled, until an opportunity is afforded for a fair hearing comporting with the requirements of 45 C.F.R. § 205.10, 36 Fed.Reg. 3034 (1971) insofar as it applies to the issues raised by plaintiffs in this case, or until this Court determines that defendant Wyman or his successor in office has promulgated regulations implementing the federal regulation, insofar as it applies to the issues in this case, and that defendant Wyman or his successor has developed a suitable method to monitor local compliance with such regulation.

The Court further orders defendants Wyman and Sugarman, their successors in office, agents and employees and those persons in active concert with them, to immediately resume full assistance for all recipients under the AFDC and AABD programs who have had their assistance reduced, suspended or terminated since April 14, 1971 and have requested a fair hearing from the New York State Department of Social Services and who have not yet had a decision on their fair hearing.

The motions of the eight welfare recipients seeking to intervene in this suit, pursuant to Rule 24(b), Fed.R.Civ.P., are granted.

This opinion constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52(a) Fed.R.Civ.P.

So ordered.