Anthony J. Di Giovanna, J.
In this article 78 proceeding petitioner seeks judgment reversing the determinations made by the respondents in refusing to provide housekeeping services and in reducing his family’s public assistance budget because he insisted on attending college full time under the seek Program, thus being unavailable for employment.
The record discloses that petitioner is 35 years old, living with his wife and five children. He was enrolled as a full-time student at cony taking 16 credits and expects to be graduated in February, 1973.
On July 23, 1971 petitioner was advised that respondent City of New York, Department of Social Services, intended to discontinue his public assistance grant on August 16, 1971 for the reason that he had enrolled in college even though his request for approval for day college attendance was denied and that he was not actively seeking employment as he was instructed to do.
While no job was ever offered him, he claims that he never refused a job but would not take one that interfered with his schooling; that he would not transfer to night classes since that would make him ineligible to receive the weekly stipend of $48.60 he received in the seek Program, which allowance was not a budgeted item.
A predetermination hearing was held on August 27, 1971 at which his attorney sought to have the reviewing officer disqualify herself on the ground that she was not a proper person to conduct a hearing as required by 18 NYCRR 351.26. This, she refused to do and after the hearing rendered a decision finding that ‘ ‘ Inasmuch as he was taking an academic course and not enrolled in a program of vocational rehabilitation or training, he is not authorized to continue his college education. Should he continue with his college attendance in September, as he has indicated was his intention, he was to be removed from the budget and court action taken by his wife for support.”
*876 He thereafter received a notice from the department dated September 15, 1971 that effective October 1, 1971 his semimonthly public assistance grant would be reduced from $219.65 to $159.15 for his “failure to seek employment as advised by the Department. Also Mrs. Kenton will receive check for rent in amount of $51.15 and .regular needs $148. Mr. Kenton has been removed from the budget for failure to comply effective October 1, 1971 ”.
It further appears that petitioner’s wife was suffering from a nervous condition and unable to cope with responsibilities of the home. In view of this condition, the city was providing housekeeping services from a vendor agency which supplied a worker from 12 to 4. On August 5, 1971 there was an altercation between petitioner’s wife and the housekeeper who claimed that she had been assaulted and beaten by her. Under the circumstances the vendor agency discontinued servicing Mrs. Kenton.
The record fails to disclose any request by petitioner for continuation of this housekeeping service or that a notice was sent by the City Department of Social Services of its intention to discontinue such .services.
The issues confronting the court are:
(a) whether the officer for the City Department of Social Services reviewing the facts at a pretrial hearing should have disqualified herself;
(b) whether petitioner, a participant in the seek program, is still entitled to public assistance as previously budgeted;
(c) was petitioner required to receive a notice of intent to discontinue housekeeping .services.
The pertinent parts of 18 NYCRB 351.26 as it existed prior to April 22, 1972, provided: “ (a) When a social .services official proposes to discontinue, suspend or reduce a grant of public assistance he shall notify the recipient in writing of his intention to discontinue, suspend or reduce the grant at least seven days prior to the proposed effective date of the discontinuance, suspension or reduction together with the reasons for his intended action * * * Such notification shall further advise the recipient; that if he makes request therefor, he may appear at the time and place indicated in the notice before the person identified therein who will review his case with him; that at such review he will be afforded an opportunity to question any persons who appear at the review and present evidence against him, that he will be afforded an opportunity to present written and oral relevant evidence and argument to demonstrate why *877 his grant should not be discontinued, suspended or reduced; and that he may appear and present such evidence and argument, and ask questions by himself or by an attorney or ether representative. Only the social services official or an employee of his social services department who occupies a position superior to that of the supervisor who approved the proposed discontinuance, suspension or reduction, and who had not participated in making the proposed determination under review shall be designated to make such review.” (Emphasis supplied).
It therefore appears that the original hearing officer comes within the ambit of this section. She had no part in the original proposal to discontinue petitioner’s assistance. She was superior to the case unit supervisor who approved the findings of the case consultant that petitioner was not qualified for public assistance. Under these circumstances, she was qualified to conduct the preliminary hearing for the respondent Sugarman.
Petitioner further asserts that respondents are bound by bpa memo 30/70 dated February 9, 1970 directed to the Directors of All Centers from Lawrence Mayer, Director Bureau of Public Assistance providing:
1 ‘ It has recently come to the attention of the Bureau of Public Assistance that staff in the Social Service Centers is advising Public Assistance recipients who are enrolled in the 1 Operation seek ’ program that they must leave the seek program, and accept referral to other training or employment in order to qualify for continued Public Assistance.
“ Staff is to be reminded that persons actively engaged in seek are recognized as participating in an approved training program and are not to be considered available for referral to employment or other training.”
•Section 164 of the Social Services Law was amended, effective July 1, 1971 by providing that employable persons receiving home relief shall be required to perform such work as shall be assigned to them.
Paragraph d of subdivision 4 of section 131 of the Social Services Law clearly provides: ‘1 For the purposes of this subdivision and subdivision five, a person shall be deemed employable if such person is not rendered unable to work by * * *
full time attendance at school in the case of minor, in accordance with provisions of this chapter; full-time, satisfactory participation in an approved program of vocational training or rehabilitation ”.
No other decision could have been reached under the circumstances since the petitioner was neither a minor nor a par *878 ticipant of an approved vocational training or rehabilitation program. The record fails to disclose anything which would warrant that a different conclusion would have been reached by any other examiner. Since no bias, prejudice or unreasonableness of the decision reached has been shown, it must be upheld.
Whether a notice of intent to discontinue housekeeping services should have been given is another matter. Having undertaken to supply such services presupposes a finding by the City Department of Social Services that such service was required. To terminate same would be, in essence, .reducing petitioner’s grant of aid to dependent children. Such action would require the giving of notice to petitioner and the right to a “ fair hearing ” (Goldberg v. Kelly, 397 U. S. 254). The record indicates that although the City Department of Social .Services does not include, in petitioner’s budget, an amount covering a housekeeper, it supplies same through an outside agency; that while the agency that had been supplying such services refuses to continue, there are other agencies available to supply such services.
The record further indicates that while no notice of intent to discontinue housekeeping services was given to petitioner, he was aware that it was not being furnished; that he never made a demand for its continuance but instead demanded and received a ‘ ‘ fair hearing ’ ’, which, together with the question of the decrease in his public assistance, went into the issue of the discontinuance of the housekeeping services. He appeared with counsel at the hearing, cross-examined the witnesses produced by the department and submitted testimony of his own.
Subdivision (c) of 18 NYCRR 352.9 provides for the purchase by the Social Services District of housekeeping services for a recipient of welfare who is unable to perform housekeeping tasks. The decision of respondent Wyman after his fair hearing found that since the appellant (petitioner herein) “ is available to and able to do the housekeeping, the family is not entitled to housekeeping .services,” was not unreasonable, unsupported by the facts nor was it arbitrary or capricious.
The rule laid down in Goldberg v. Kelly (supra) and more recently enlarged in Almenares v. Wyman (334 F. Supp. 512, mod. 453 F. 2d 1075, cert. den. 405 U. S. 944) requires that notice be given to a welfare recipient before his allowance is reduced or terminated, that he be given a fair hearing and according to Almenares v. Wyman (supra), continue to receive his full allowance until after the decision on the “ fair hearing ”. *879 Petitioner herein has had his fair hearing upon which a decision has been rendered.
However, since the hew regulation governing fair hearings (45 C. F. R 205-210, 36 Fed. Reg. 3034 [1971]) passed upon in Almenares v. Wyman (supra), requires payments to be continued to welfare recipients until after the decision in the State’s fair hearing, it is directed that petitioner be paid all sums deducted from his welfare allowance during the period up to the date respondent Wyman rendered his decision on the State’s fair hearing.