ESSEX COUNTY WELFARE BOARD, PETITIONER-APPEL-
LANT, v. DEPARTMENT OF INSTITUTIONS AND AGEN-
CIES AND BRENDA BANKS, RESPONDENTS-RESPON-
DENTS.

Superior Court of New Jersey
Appellate Division

Submitted January 5, 1976—Decided February 10, 1976.

Before Judges ALLCORN, KOLE and KING.

*Mr. William J. Tamburri,* attorney for appellant (*Ms. Susan J. Barone* on the brief).

*Mr. William F. Hyland,* Attorney General of New Jersey, attorney for respondent, Department of Institutions and Agencies (*Mr. Stephen Skillman,* Assistant Attorney General of counsel and *Mr. Guy S. Michael* and *Mr. Paul N. Watter,* Deputy Attorney General, on the brief).

*Mr. Frank E. Catalina,* Rutgers Urban Legal Clinic, attorney for respondent Brenda Banks (*Mr. Alan Zaks* and *Ms. Beverly Kalman* on the brief).

The opinion of the court was delivered by
KING, J. S. C., Temporarily Assigned. The Essex County Welfare Board (board) appeals from the decision of the State

Department of Institutions and Agencies (Department) which, following a fair hearing procedure pursuant to *N. J. S. A.* 44:7–18, ruled in favor of Ms. Banks and directed assistance retroactive to September 1974.

Applicant Brenda Banks, a resident of Essex County, was enrolled as a third-year student at Ramapo College, majoring in political science at the time the board discontinued benefits. Ms. Banks has been a recipient of Aid to Families with Dependent Children (AFDC) for a number of years under the grant program of the board. In addition to her regular monthly grant she has been receiving training allowance and child care payments from the board in order to assist her in the pursuit of her education, pursuant to §§ 420.1 and 411.2 of the Financial Assistance Manual (FAM). Ms. Banks requested continued child care and training allowances after completing two years of college. On September 30, 1974 the board sent her notification of its intent to suspend payment of the requested additional benefits in aid of her education. On October 11, 1974 she requested a fair hearing before the Division of Public Welfare (Division) of the Department to contest suspension of her benefits under *N. J. S. A.* 44:7–18.

At the hearing held on October 30, 1974 the board's representative testified that Ms. Banks' training allowance and child care expenses were suspended on the basis of the board's general policy to terminate such benefits after the successful completion of two years of college. The board stated that all recipients in such a position are deemed "job ready and further education is not considered reasonable or feasible." The hearing officer from the Division found that the board's suspension of service payments constituted abuse of its lawful discretionary authority insofar as it was based on a county-formulated board policy and not on an individual consideration of Ms. Banks' particular situation.

On January 23, 1975 the Division's decisional panel adopted the hearing officer's recommended findings and directed the board to reinstate Ms. Banks' supplemental ben-

efits retroactive to September, 1974. The hearing officer's decision as adopted by the Commissioner states as follows:

Regulations as specified in section 400 do require consideration of the merits of each request on an individual case basis. There is no evidence that such an evaluation was undertaken by the Welfare Board. Duly promulgated official regulations may not be abrogated by unilateral action on the part of the County Welfare Board. The hearing officer concludes that the Welfare Board's rejection of appellant's request, solely on the grounds of Welfare Board policy, is an unreasonable exercise of lawful discretionary authority. Accordingly, the hearing officer recommends that the Welfare Board be directed to provide the requested service payments, retroactive to September, 1974.

The Decisional Panel recognizes the discretion accorded the Welfare Board to approve or deny such special payments as requested in the instant case. However, the exercise of such discretion requires determinations based on the merits of the individual case. According to the evidence the determination in the instant case was pursuant to a locally formulated policy without deliberate review and evaluation of the vocational objective or whether attainment of such objective was reasonable or feasible. Accordingly, the action terminating expenses incident to training has not been adequately substantiated and such action is reversed.

The Essex County Welfare Board is directed to reinstate expenses incident to training retrocative to September 1974 and to recognize verified child care costs actually incurred during such period.

On March 4, 1975 appellant filed a notice of appeal for a reversal of the Division's findings and a termination of contested payments.

The county welfare board argues on appeal that although its power to continue or terminate grants is limited by specific statutory prescriptions, the discretionary powers granted to the local boards by those enactments is controlling in this case. We find this contention to be without merit. Pursuant to the New Jersey Department of Institutions and Agencies, Division of Public Welfare, Manual of Administration, Part II, "Individual and Public Assistance," the following pertinent policy was adopted.

The goal of public assistance is to help the client realize his full potential, and make use of his own capabilities for self-support.

Therefore, every individual, unless specifically exempt as below, shall personally register for manpower services, training and employment.

The County Welfare Board as agent of the Department of Labor is responsible, through the income maintenance staff, for determining who is required to register and who is exempt. A personal interview with each individual is desirable but not mandatory. However, each registrant must personally sign the registration form (e. g., a mother cannot sign for her 16 year old child). [*Manual of Administration*, § 2286]

The above section established what was commonly known as the W.I.N. program. The State of New Jersey, through the Department of Institutions and Agencies, then provided the means by which a local board could choose to devise a policy for training those persons who were either exempt or not eligible to participate in the W.I.N. program. This program was optional with the local board.

420. Expenses Incident to Training

420.1 An allowance for expenses incident to training shall be recognized except when Section 420.2 is applicable, for each member of the eligible unit participating in one of the following:

a. a job or work experience training program designated and/or approved by the County Welfare Board;

b. enrollment in a full-time (as defined by the institution client is attending) educational experience other than the normal four year high school curriculum, regardless of the type of program, *provided such educational program is designed to attain a vocational objection which, in the judgment of the County Welfare Board, is both feasible and reasonable.*

420.2 An allowance for expenses incident to training shall not be recognized in any of the following situations:

b. In ADC, client is participating in the W.I.N. program. [*Financial Assistance Manual, Part IV, page* 6, 11/1/72; emphasis supplied]

The county welfare board correctly notes that the above-cited regulation was optional with the local board, that is, each and every board in the State did not have to provide the funds as an allowance for expenses incident to such training. However, the Essex County Welfare Board did adopt this section. The board further argues that in doing so it prescribed specific guidelines as to the limit of expenditures

which could be made from its public funds. The board thus concludes that it assumed a specific limit to the amount of the resulting expenditures which this "voluntarily assumed" responsibility could entail. The board looks to the language of the state standard that "in the judgment of the County Welfare Board, [it] is both feasible and reasonable," 420.1(*b*), *supra,* for justification of its policy. On the basis of this language alone, the board argues that the mandate of the state regulation is for the grant to be allowed or disallowed exclusively in accordance with the policy and judgment of the county welfare board.

The county welfare board, pursuant to this reasoning, promulgated its policy providing payments for two years of college level vocational training, or 60 credits. Similar to the W.I.N. program, they allegedly provided continuation of the college program benefits beyond the two-year level for exceptional cases whose merits would be individually considered. The board then applied these standards to Ms. Banks' request and automatically terminated her supplemental education benefits because she had completed her two years of college-level training. No individual consideration was afforded to Ms. Banks' case. The hearing examiner specifically found that "Regulations as specified in section 400 do require consideration of the merits of each request on an individual case basis. There is no evidence that such an evaluation was undertaken by the Welfare Board."

Participation in the jointly funded AFDC program is dependent on state conformity with the requirements of the Federal Social Security Act (42 *U. S. C. A.* § 601 *et seq.*) and regulations promulgated thereunder by HEW (45 *C. F. R.* § 201 *et seq.*). 45 *C. F. R.* § 205.100(a)(i) provides that a state plan under the AFDC program must be administered or supervised by a single state agency. (45 *C. F. R.* § 220.2(a) deals with service payments.) Additionally, 45 *C. F. R.* § 220.2(b)(1) and (2) provide that the single-unit supervising services is responsible for the "development of policy and the maintenance of policy control

for all parts of the service program" and must "direct program supervision of the local agency or otherwise be in a position to assure proper program implementation."

Pursuant to federal mandate, the AFDC program in New Jersey must be administered according to the rules of a single state agency, *i. e.*, the Division of Public Welfare, Department of Institutions and Agencies. The county welfare boards established to locally administer the AFDC program are required, by *N. J. S. A.* 44:7–12 as applied to the AFDC program through *N. J. S. A.* 44:10–2, to do so in accordance with State requirements.

The Department here relies on the applicable federal regulations regarding service payments and those pertaining to the Social Security Act, noting that the language of the state statute implementing the AFDC program in New Jersey closely follows the federal language, *i. e.*, *N. J. S. A.* 44:10–1(a)(3). Following the welfare board's precedent, the State then points to the language of *N. J. A. C.* 10:82–12.10:

(3) Enrollment in a full-time education experience other than the normal four year high school curriculum, regardless of the type of program, provided such educational program is designed to attain a vocational objective, which in the judgment of the County Welfare Board is both feasible and reasonable. * * *

The State stresses the importance of *N. J. A. C.* 10:82–12.2(b)(1) which states that child care service payments may be provided when the county welfare board deems them essential because the parent or parent-person who normally cares for the child is in training for employment. Though the State concedes by its reading of the statute that the board has a certain amount of discretionary power here, the Division's contention is that under appropriate circumstances the board is required to provide training allowance and child care funds. They submit, however, that the method of determining the appropriate circumstances is not discretionary with the board but rather must conform with the controlling

federal and state statutes. By establishing an independent uniform policy with regard to eligibility for training allowance and child care the State argues that the board acted improperly by violating the federal mandate that policy be formulated throughout a state by a single state agency and that individual review be given to all requests for family service payments. This court finds the local policy cutting off benefits automatically after two years without individual considerations of the recipient's case inimicable to the uniform state policy.

In *Serritella v. Engelman,* 339 *F. Supp.* 738 (D. N. J. 1972), aff'd 462 *F.* 2d 601 (3 Cir. 1972), a case involving the welfare hearing process in New Jersey, the court ruled that county boards were without authority to terminate assistance grants on the basis of local hearing alone where a state hearing was demanded. Proponents of the local hearing concept sought to justify their policy by arguing the inconsistency of the federal regulations: 42 *U. S. C.* § 602, allowing a "two-tiered" state welfare system (where the counties administer the welfare program subject to the supervision of the state) and *Reg.* 205.10 which requires the continuation of assistance through the holding of fair hearings at the state level. The court denied this inconsistency challenge, holding that while the State is permitted to administer its program through local county agencies, HEW's single state agency concept was interpreted to require the State to be the sole arbiter of contested assistance grants.

*Almenares v. Wyman,* 334 *F. Supp.* 512, 517 (S. D. N. Y. 1971), aff'd on other jurisdictional grounds, 453 *F.* 2d 1075 (2 Cir. 1971), *cert.* den., 405 *U. S.* 944, 92 *S. Ct.* 962, 30 *L. Ed.* 2d 815 (1971), involved a class action by recipients of monthly benefits in the AFDC program. Here, as in *Serritella,* the court was unpersuaded by the argument that a statute allowing for the option of local administration of the AFDC program conflicts with the federal fair hearing provision because it places the responsibility for the hearing upon the state. The court ruled that "the Congressional man-

date merely appears to be for the general administration of welfare plans at the local level. This does not forbid the administrative agency from devising regulations which place specific duties upon the state agency." *Almenares v. Wyman, supra* at 520.

The board's second argument is that the Decisional Panel erred as a matter of law by interpreting the provisions for "exceptional cases" and imposing its theory of reasonableness. Based on the conclusions previously stated, particularly in light of the *Serritella* case, the State is the proper arbiter of this question. Moreover, the Decisional Panel did not define what constitutes an exceptional case or impose new standards for reasonableness other than the federal and state mandates which require individualized consideration of contested cases.

The Division's findings as confirmed by the Commissioner are entirely consistent with the federal scheme and the implementing policy as set forth in the state regulations:

> The law provides that the county welfare board shall decide whether or not an individual is eligible, the amount of assistance to which an eligible individual is entitled, and the conditions and method of paying or providing assistance subject to *policy and procedure established by the State agency.* [*N. J. A. C.* § 10:81-13.2; emphasis supplied]

Moreover, this court is concerned that the formulation of a conclusive presumption terminating benefits on a local level may have federal due process implications. In *Stanley v. Illinois,* 405 *U. S.* 645, 92 *S. Ct.* 1208, 31 *L. Ed.* 2d 551 (1972), the Supreme Court held that it was a violation of the Due Process Clause of the Fourteenth Amendment for the state to rely on a conclusive presumption that an unwed father is an unfit parent. The court required that such parental inability be established on the basis of individualized proof. See also, *Goldberg v. Kelly,* 397 *U. S.* 254, 90 *S. Ct.* 1011, 25 *L. Ed.* 2d 287 (1970) ; *Hausman v. Dept. of Inst. and Agencies,* 64 *N. J.* 202 (1974).

The decision of the Division as confirmed by the Commissioner is affirmed insofar as the ruling below disallowed

the local board's formulation of a policy to automatically discontinue the supplemental benefits after two years without individualized consideration of the recipient's particular situation. Based on the relevant federal and state statutes and regulations and on the decisions of the federal courts in *Serritella v. Engelman,* and *Almenares v. Wyman, supra,* requiring a uniform state policy and individualized consideration of recipient need, the State, via its fair hearing procedure was empowered to overturn the local board's decision based on a local policy which failed to consider the merits of the particular case. However, in the present case we cannot tell from the decision of the hearing officer whether Ms. Banks' particular situation was actually considered on the merits. The decision simply ordered the local board to reinstate Ms. Banks' payments retroactively. Nowhere in the decision is there a disclosure of a consideration of Ms. Banks' eligibility for supplemental benefits on the merits of her case.

Inasmuch as the record does not disclose any findings on the merits of Ms. Banks' application we remand to the Division which, in turn, should order the local board to make a determination of Ms. Banks' application on the merits pursuant to appropriate administrative procedure. The recipient's right to a "fair hearing" at the state level in the event of an adverse determination at the local board level is preserved. *N. J. S. A.* 44:7-18.

In view of our conclusion we need not determine the issue raised by the recipient as to whether the local board has authority to obtain judicial review from an order of the Division of this type of case. The issue of the board's standing to appeal the decision of the Division here has not been fully briefed and presented by the parties so we express no views on this point.

The order of the Division directing the board to reinstate Ms. Banks' payments retroactively is reversed and the matter is remanded to the Division for proceedings consistent with our holding in this matter. This court does not retain jurisdiction.