Sam **SERRITELLA** et al., Plaintiffs,
and
**Earl Evans and Clara Evans, and all others similarly situated, Plaintiffs in intervention,**

v.

Irving **J. ENGELMAN**, individually and as Director of the Division of Public Welfare of the Department of Institutions and Agencies, and Stella Cassi, Director of the Bergen County Welfare Board, Defendants.

Virginia **SIMMONS** and Colonel Simmons, her husband, individually and on behalf of their minor children and on behalf of all others similarly situated, Plaintiffs,

v.

Irving **ENGELMAN**, individually and as Director of the Division of Public Welfare of the Department of Institutions and Agencies of the State of New Jersey, and Philip K. Lazaro, Director of the Essex County Welfare Board, Defendants.

Civ. A. Nos. 1256–71, 34–72.

United States District Court,
D. New Jersey.
Feb. 24, 1972.

Richard S. Semel, Garfield, N. J., Murray J. Klein, Camden, N. J., Eric S. Summerville, Newark, N. J. (Richard I. Greenberg, Steven Cole, New York City, Center on Social Welfare Policy and Law, of counsel), for plaintiffs.

George F. Kugler, Atty. Gen. of N. J., by Daly D. E. Temchine, Deputy Atty. Gen., Trenton, N. J., Pierce H. Deamer, Jr., Bergenfield, N. J., for defendants.

Herbert J. Stern, U. S. Atty. by Stephen King, Asst. U. S. Atty., Newark, N. J., for HEW, amicus curiae.

## OPINION AND ORDER

LACEY, District Judge:

Plaintiffs, recipients of welfare benefits, have filed these actions under the Civil Rights Act of 1871, 42 U.S.C. § 1983, seeking a declaratory judgment and injunctive relief,[1] as well as damages. In addition, they assert a cause of action under Titles IV and XVI of the Social Security Act. 42 U.S.C. §§ 601 et seq. and 1381 et seq. The defendants are Irving Engelman, Director of the Division of Public Welfare of New Jersey's Department of Institutions and Agencies; Stella Cassi, Director of the Ber-

gen County Welfare Board, and Philip Lazaro, Director of the Essex County Welfare Board.[2]

The named plaintiffs in the first action filed are Sam and Geraldine Serritella, and Marilyn Elassar. The motion of Earl and Clara Evans to intervene therein [Fed.R.Civ.P. 24(b)] is hereby granted. This action has been consolidated for all purposes with Simmons v. Engelman, et al., subsequently filed in this Court, and raising identical issues.

There are before the Court at this time various motions. Plaintiffs have moved for a preliminary injunction and for an order determining that these matters may be maintained in class action form under Fed.R.Civ.P. 23. Defendants, at the same time, have moved to dismiss the complaint on the grounds that this Court lacks subject matter jurisdiction; that the plaintiffs lack standing to sue; and that the claims at issue must be tried to a three-judge court. Defendants also move under Fed.R.Civ.P. 19 for leave to file a third-party complaint against the Department of Health, Education and Welfare (HEW).

The plaintiffs, seeking to represent all recipients of public assistance under the federally aided Aid to Dependent Children (ADC)[3] and Aid to the Aged, Blind and Disabled (AABD)[4] programs, both administered by county welfare boards under Mr. Engelman's supervision, advance two claims. One is constitutional, the other statutory; and at the heart of each is the fact that plaintiffs suffered either termination or reduction of welfare benefits by action of their county welfare boards, without a hearing, in violation of Due Process standards ar-

---

1. Circuit Judge Aldisert illuminates the likenesses of and the elusive differences between these remedies, particularly in the federalism area, in Spencer v. Kugler, 454 F.2d 839 (3 Cir. 1972). See also Thiokol Chemical Corp. v. Burlington Industries, 448 F.2d 1328 (3 Cir. 1971).

2. Mr. Lazaro is named as a defendant in the *Simmons* case. Mrs. Cassi is a defendant in the action brought by the Serritellas and Mrs. Elassar.

3. For a description of this program, see King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) and X v. McCorkle, 333 F.Supp. 1109 (D.N.J. 1971), aff'd. per curiam sub nom. Engelman v. Amos, 404 U.S. 23, 92 S.Ct. 181, 30 L.Ed.2d 143 (1971).

4. 42 U.S.C. § 1381 et seq.

ticulated in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) [hereinafter *Goldberg*] and pertinent New Jersey regulations.[5] Further, in connection with the statutory claim, plaintiffs allege that defendants have, to plaintiffs' damage, wilfully refused to comply with a certain HEW regulation, 45 C.F.R. § 205.10, 36 Fed.Reg. 3034 (1971) [hereinafter Reg. 205.10]. This regulation implements the "fair hearing" requirements of the Social Security Act through HEW's rule-making power. [42 U.S.C.A. § 1302][6]

Reg. 205.10 requires a 15-day notice of any state action adverse to a welfare recipient.[7] In addition, and more significantly, it provides that assistance is to be continued without reduction or termination until, if requested, an adverse fair hearing decision is rendered on the state level. This is the only ad-

ministrative review required by Reg. 205.10.

New Jersey's regulations provide a pretermination or prereduction hearing on the county level with the right of the welfare recipient to request thereafter a fair hearing on the state level if the county action is adverse. In New Jersey, however, contrary to Reg. 205.10, benefits cease or are reduced after a county hearing adverse to the recipient.[8] Thus, the recipient does not receive the disputed benefits while he awaits his state fair hearing.

█ Defendants concede the obvious inconsistency between Reg. 205.10 and the state procedures. They also concede that if Reg. 205.10 is valid, New Jersey's procedures must conform to it, at least as long as federal funds are provided.[9] Defendants contend, however, that Reg. 205.10 is unauthorized and in violation of

5. Each public assistance title of the Social Security Act requires that the opportunity for a fair hearing before the state agency be granted to an aggrieved individual. *See* 42 U.S.C. §§ 302(a) (4) [Old Age Assistance] ; 602(a) (4) [ADC] ; 1202(a) (4) [Aid to the Permanently and Totally Disabled] ; 1382(a) (4) [Aid to the Aged, Blind and Disabled] and 1396(a) (4) [Medical Assistance Programs]. New Jersey participates in the following titles : 42 U.S.C. §§ 601 et seq. ; 1381 et seq. ; and 1396 et seq.

Pursuant to its option under federal law, 42 U.S.C. §§ 602(a) (3) and 1382(a) (3), the New Jersey legislature has chosen to designate the Division of Public Welfare of the Department of Institutions and Agencies as the state agency charged with supervision of the welfare programs, while it has charged the various county welfare boards with the responsibility of administering the program under state supervision. *See e. g.* N.J.S.A. 44:7-1 et seq.

6. 42 U.S.C. § 1302 provides :

[T]he Secretary . . . shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which [the Secretary] is charged under this chapter.

7. New Jersey regulations presently provide for a 10-day notice provision. Man-

ual of Administration §§ 2911.3b(1) (a) ; 5(a) (1).

8. *Id.* §§ 2911.3b ; 5a. New Jersey first began to provide pretermination and prereduction hearings shortly after the *Goldberg* decision, which was announced March 23, 1970. By this time it was no secret that HEW would be proposing regulations which would provide for continuation of assistance until a decision at the state level. *See* Wheeler v. Montgomery, 397 U.S. 280, 282–283, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970) (Burger, C. J., dissenting).

9. A state plan is subject to continuing scrutiny by the Secretary of HEW. Conformity is monitored and, if irregularities appear, the Secretary, upon due notice, must provide the state agency with a conformity hearing. If after such a hearing the Secretary determines that the state plan is nonconforming, he must terminate federal assistance until the nonconformity is cured. 42 U.S.C. §§ 604(a) and 1384. An appeal from the Secretary's decision may be filed in the Court of Appeals. 42 U.S.C. § 1316(a). To date, HEW has not instituted a conformity proceeding against any state which does not comply with Reg. 205.10. *Cf.* Arizona State Department of Public Welfare v. Department of HEW, 449 F. 2d 456 (9 Cir. 1971).

the Social Security Act and they have frankly announced that they have no intention of instituting conforming procedures.[10]

## THE PLAINTIFFS

Plaintiffs Sam and Geraldine Serritella were recipients of public assistance under the ADC program. In June, 1971, they allegedly received a telephone message from their county welfare board, confirmed shortly thereafter by letter, that their assistance would be terminated immediately because of a new state law. Assistance was in fact terminated July 1, 1971. There was no hearing. Mr. Serritella then became employed but left after a short time, allegedly because of poor health. He then sought assistance under the Aid to Families of the Working Poor (AF WP) program,[11] but was rejected under a regulation barring assistance to one voluntarily ceasing employment within 90 days of application.[12]

In August, 1971, counsel for the Serritellas was notified by letter from a county welfare board supervisor that the Serritella ADC termination was not due to a change in state law, as had earlier been stated, but to a decision of a medical review board that Mr. Serritella was not disabled. Counsel for Mr. Serritella requested a state level hearing, which was held on September 27, 1971. No decision has yet been rendered. This

request for a hearing does not, of course, eliminate or render moot the allegations in his complaint.[13]

Plaintiff Elassar was also receiving ADC assistance. On July 29, 1971, she allegedly received notice by telephone from her county welfare board that her grant would be reduced from $290 to $225 monthly. Reduction shortly followed, based upon a state regulation which disallowed deductions from income paid to "legally responsible relatives" for child care expenses.[14] The county's notification to her of a right to a local hearing was deficient on its face.[15] Her counsel then requested a state-level hearing, raising the aforesaid notice defect, the inapplicability of the particular regulation, and the fact that Reg. 205.10 was not being followed. This hearing was held on November 3, 1971, and decided adversely to her in all respects on December 15, 1971.

The allegations of the Evans complaint are not unlike those of the Serritellas, charging termination of ADC assistance after notice by telephone and without a hearing. Mr. and Mrs. Simmons suffered termination in a like manner.

## STANDING

Defendants first move to dismiss the Serritella-Elassar complaint on the ground that they lack standing to maintain this action.[16]

---

10. Defendants could not of course argue that this Court should wait until HEW determines that New Jersey's plan is nonconforming. If anything, they should prefer a private action by welfare recipients because any remedy this Court might fashion ". . . would be preferable to a judgment ordering the cessation of the flow of welfare funds until the state plan complied with federal law." Bryant v. Carleson, 444 F.2d 353, 360 (9 Cir. 1971).

11. This is a non-federally funded program. N.J.S.A. 44:13–1 et seq.

12. AFWP Manual § 3250.1A.

13. Mr. and Mrs. Serritella have had their assistance continued by order of this Court dated September 16, 1971.

14. Financial Assistance Manual § 411.4b. See N.J.S.A. 44:1–140.

15. The printed form of notice contains the phrase "Cite specific budget manual regulation on decreases only." No such citation appeared on the notice sent to Mrs. Elassar.

16. While defendants' "standing" motion does not question standing in the traditional sense in which it is treated by the case law, we shall regard the motion as raising a true standing question and, as well, the question of whether the Serritellas waived their constitutional claim.

The question of true "standing" must be viewed in an Article III "case or controversy" context. As then Chief Justice Warren pointed out in Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968):

> . . . [T]he question of standing is related only to whether the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution. . . .

Our task, therefore, is to determine whether these plaintiffs satisfy the test for determining whether a "case or controversy" exists and whether the interests of these individuals are such as to promote a truly adversary proceeding. This test, contained in Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 152–153, 90 S.Ct. 827, 829–830, 25 L.Ed.2d 184 (1970), is:

> . . . [W]hether the plaintiff alleges that the challenged ·action has caused him injury in fact, economic or otherwise . . . .
>
> \*      \*      \*      \*      \*      \*
>
> . . . [W]hether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee. . . .

See also Investment Company Institute v. Camp, 401 U.S. 617, 91 S.Ct. 1091, 28 L.Ed.2d 367 (1971); Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); Kramer v. Government of Virgin Islands, 453 F.2d 1246 (3 Cir. 1971); Contractors Association of Eastern Pennsylvania v. Hodgson, 442 F.2d 159 (3 Cir. 1971), cert. denied, 404 U.S. 854, 92 S.Ct. 98, 30 L.

Ed.2d 95 (1971); Cape May County Chapter, Inc., Izaak Walton League of America v. Macchia, 329 F.Supp. 504 (D.N.J.1971).

As to the Serritellas, defendants' argument of lack of standing is based on the affidavit of a county board caseworker who states that they voluntarily removed themselves from public assistance. Mrs. Serritella's affidavit admits that she told a caseworker that her husband had taken a job (evidently the one he had for a short time and left because of health reasons) and that she no longer wished to be on welfare.

■ Defendants' contention would be acceptable if we were to find that Mrs. Serritella had voluntarily removed herself and her family from public assistance. Such a finding is, however, unjustified. There was no voluntary relinquishment of ADC benefits; the aforesaid conversation followed by two weeks the now disputed county termination action. Under these circumstances, we find that the Serritellas have been injured, that they have not waived their remedies, and have "standing," as defendants define it, to bring this action. Association of Data Processing Service Organizations v. Camp, supra; cf. National Welfare Rights Organization v. Finch, 429 F.2d 725 (D.C.Cir. 1970).

In view of our holding as to the Serritellas, we need not concern ourselves with defendants' argument that Mrs. Elassar lacks standing. Accordingly, we will defer a determination on that issue.[17]

Defendants do not at this time challenge the standing herein of the Simmons and Evans families. However, as previously noted, their claims pose issues similar to those in the Serritella complaint, and would have, if challenged, received the same disposition.

---

17. In Mrs. Elassar's fair hearing decision, it is clear that the Hearing Examiner misinterpreted the content of Reg. 205.10. There he decided that even if Reg. 205.10 were followed in New Jersey, it would not apply here because no issue of "fact or judgment" which would require continuation of assistance was presented. See 45 C.F.R. § 205.10(a) (5) (iii) (a) (1). This conclusion is untenable because Reg. 205.10 requires that assistance be continued *until* the determination is made that the issue is not one of "fact or judgment."

## JURISDICTION

Defendants having traversed subject matter jurisdiction, we shall first examine our power to hear this suit.

▆▆▆▆ Plaintiffs allege jurisdiction under 28 U.S.C. §§ 1331, 1337, 1343, and 2201. The latter section dealing with the Declaratory Judgment Act does not confer jurisdiction which is otherwise lacking. Skelly Oil v. Phillips Petroleum, 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); Spencer v. Kugler, 454 F.2d 839 (3 Cir. 1972); McCahill v. Borough of Fox Chapel, 438 F.2d 213 (3 Cir. 1971). We likewise reject the notion that § 1337 confers jurisdiction. The Social Security Act is not an act "regulating commerce or protecting trade and commerce against restraints and monopolies." *Cf.* Potrero Hill Community Action Committee v. Housing Authority, 410 F.2d 974 (9 Cir. 1969). Nor need we deal with the problem of asserted § 1331 jurisdiction. [*see* footnote 19 *infra*]

Instead, we address ourselves to whether jurisdiction under 28 U.S.C. § 1343(3) may be invoked by a claimant alleging a violation of 42 U.S.C. § 1983. Section 1343(3) grants jurisdiction to a District Court

> To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured *by the Constitution of the United States* or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States. [emphasis supplied]

We are constrained to accept plaintiffs' position that the constitutional claim presented is a substantial one. It is virtually undisputed that the Serritella, Evans, and Simmons families were terminated from the ADC welfare rolls without the Due Process hearing mandated by the Supreme Court in *Goldberg.*

In addition, these actions contain an unresolved constitutional claim, namely, in the case of plaintiff Elassar, the question of whether a prereduction hearing is constitutionally required in all instances. The New Jersey regulations provide such a hearing,[18] but the Due Process dimensions are unclear in that *Goldberg* dealt only with terminations. *See* Daniel v. Goliday, 398 U.S. 73, 90 S.Ct. 1722, 26 L.Ed.2d 57 (1970); Wheeler v. Montgomery, 397 U.S. 282, 284–285, 90 S.Ct. 102 (1970) (Burger, C. J., dissenting). Whatever the answer to this question may be, certainly the question itself is a substantial one within § 1343(3).

Defendants further argue, however, that jurisdiction fails because of Mr. Justice Stone's now famous "personal right-property right" distinction in Hague v. CIO, 307 U.S. 496, 531–532, 59 S.Ct. 954, 83 L.Ed. 1423 (1939). *See also* Eisen v. Eastman, 421 F.2d 560 (2 Cir. 1969).[18a] Under this argument, the receipt of welfare benefits, it is claimed, is not a "personal right" and therefore the interest of the recipient is insufficient to sustain § 1343(3) jurisdiction.

This Court recognizes the validity of the Stone formulation in this Circuit. National Land and Investment Co. v. Specter, 428 F.2d 91 (3 Cir. 1970). However, its validity is one thing; its applicability to the case at bar another.

First, it must be recognized that the receipt of welfare benefits is a matter of "statutory entitlement for persons qualified to receive them." *Goldberg,* 397 U.S. at 262, 90 S.Ct. at 1017; and of course we need not discourse on whether welfare is a privilege or a right. *See* Shapiro v. Thompson, 394 U.S. 618, 627 n. 6, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Moreover, the authorities seem to ignore the Stone distinction where substantial claims of welfare recipients are involved. It is apparent why. Welfare benefits usually involve those at such a low economic level that it is proper to view these entitlements as rights

> . . . [O]f an essentially personal nature, touching such intimate things

---

18. *See* footnote 8 *supra.*

18a. Cert. denied 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1971).

as living and eating conditions [and] freedom from the marks of modern peonage . . . .

Gomez v. Florida State Employment Service, 417 F.2d 569, 579 (5 Cir. 1969).

The use of § 1343(3) jurisdiction in the context of welfare claims has been implicitly sanctioned by the Supreme Court when it decided, without comment on this point, Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Shapiro v. Thompson, *supra*; and King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). *See also* X v. McCorkle, 333 F.Supp. 1109 (D.N.J. 1971), aff'd. per curiam sub nom. Engelman v. Amos, 404 U.S. 23, 92 S.Ct. 181, 30 L.Ed.2d 143 (1971); Campagnuolo v. Harder, 440 F.2d 1225 (2 Cir. 1971); Johnson v. Harder, 438 F.2d 7 (2 Cir. 1971); Note, Federal Judicial Review of State Welfare Practices, 67 Col.L.Rev. 84 (1967); Cole, Federal Jurisdiction under Section 1343, 3 Clearinghouse Rev. 220 (1970). Moreover, although the Supreme Court has not explicitly stated that such a jurisdictional grant was proper, lower federal courts have not been as reticent to do so. *See* New Jersey Welfare Rights Organization v. Cahill, 448 F.2d 1247 (3 Cir. 1971); Almenares v. Wyman, 453 F.2d 1075 (2 Cir. 1971), cert. denied, 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (Feb. 22, 1972); Bryant v. Carleson, 444 F.2d 353 (9 Cir. 1971); Jones v. Township of North Bergen, 331 F.Supp. 1281 (D.N.J.1971); Freeman v. Engelman, Civil No. 84–70 (D.N.J. Sept. 16, 1971); Linnane v. Betit, 331 F.Supp. 868 (D.Vt.1971).

Given the "brutal need" of the welfare recipient, and both his and society's strong interest in assuring that Due Process does not become a meaningless phrase, we hold that the rights of the welfare recipient, whatever they might be, cannot be viewed as mere naked property rights insufficient to support § 1343(3) jurisdiction. We find nothing to limit us in this respect in National Land and Investment Co. v. Specter, *supra*. *See also* Campagnuolo v. Harder, *supra*; Johnson v. Harder, *supra*; 1971 Duke L.J. 635. *Cf.* Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa.1970) and Tichon v. Harder, 438 F.2d 1396 (2 Cir. 1971). This Court accordingly finds present herein a substantial constitutional claim, and hence § 1343(3) jurisdiction. In view of this determination, it is unnecessary to decide whether jurisdiction lies as well under 28 U.S.C. § 1331.[19]

19. Under this section jurisdiction lies over matters arising under the Constitution, laws, and treaties of the United States if the amount in controversy, exclusive of interest and costs, exceeds $10,000. The question of whether welfare monies are functionlly held in trust for recipients who may assert a common and undivided interest in them is discussed in a compelling opinion by District Judge Tenney in Bass v. Rockefeller, 331 F.Supp. 945 (S.D.N.Y.1971) vacated and dismissed as moot, 2 CCH Poverty L.Rep. ¶ 13,807 (2 Cir., Sept. 16, 1971). *See also* Marquez v. Hardin, Civil No. 54416 [1968–1971 transfer binder], Poverty L.Rep. ¶ 10,393 (N.D.Cal. Sept. 5, 1969). For a discussion of the problems of aggregation of claims to achieve the requisite jurisdictional amount, *see* Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L. Ed.2d 319 (1969), dealing with 28 U.S.C. § 1332, and Clark v. Paul Gray, Inc., 306 U.S. 583, 59 S.Ct. 744, 83 L.Ed. 1001 (1939).

The statutory claim arises under the Social Security Act. This Act is not one "providing for equal rights of citizens or of all persons within the jurisdiction of the United States." Therefore, independent § 1343(3) jurisdiction cannot be grounded upon said Act. Rosado v. Wyman, *supra*, 397 U.S. at 405 n. 7, 90 S.Ct. at 1214. *Cf.* Commonwealth of Pennsylvania v. Hill, 439 F.2d 1016 (3 Cir. 1971), cert. denied, 404 U.S. 985, 92 S.Ct. 445, 30 L.Ed.2d 370 (1971); and Housing Authority of City of Newark v. Henry, 334 F.Supp. 490 (D.N.J.1971).

We also have no need to decide whether there is independent jurisdiction over the statutory claim by virtue of the provisions of 28 U.S.C. § 1343(4). This would of course require a determination of whether the Social Security Act is an "Act of Congress providing for the pro-

## THE STATUTORY CLAIM

Having found § 1343(3) jurisdiction over the constitutional claim, we are confronted by the issue of whether or not we may assert jurisdiction over the statutory claim of noncompliance with the HEW regulation without regard to jurisdictional amount. *See* Herzer, Federal Jurisdiction Over Statutorily Based Welfare Claims, 6 Harv.Civ.Rights-Civ.Lib. L.Rev. 1 (1970).

Our analysis leads to the conclusion that both the statutory and constitutional claims clearly "derive from a common nucleus of operative fact." United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). It accords with logic, justice, and considerations of judicial economy to try these claims together, particularly where, as here, both involve questions of federal law and comity or deference to a state tribunal is not involved. *Cf.* Rosado v. Wyman, *supra*, 397 U.S. at 404, 90 S.Ct. 1207. Under such circumstances, this Court has the power, which, in its discretion, it will exercise to assert pendent jurisdiction over the statutory claim. There is substantial authority for our so doing, not only in somewhat similar factual and legal settings, Dandridge v. Williams, *supra*, 397 U.S. at 475–476, 90 S.Ct. 1153; Wyman v. Rothstein, 398 U.S. 275, 90 S.Ct. 1582, 26 L.Ed.2d 218 (1970), but also under the pragmatic view of pendent jurisdiction taken in this Circuit and elsewhere. *See* Nelson v. Keefer, 451 F.2d 289 (3 Cir. 1971); Schwab v. Erie Lackawanna Railroad, 438 F.2d 62 (3 Cir. 1971); Knuth v. Erie-Crawford Dairy Coop. Association, 395 F.2d 420 (3 Cir. 1968); Jacobson v. Atlantic City Hospital, 392 F.2d 149 (3 Cir. 1968); Wilson v. American Chain and Cable, 364 F.2d 558 (3 Cir. 1966); *and see* Almenares v. Wyman, *supra*; Leather's Best v. S. S. Mormaclynx, 451 F.2d 800 (2 Cir. 1971); Astor-Honor Inc. v. Grosset & Dunlap, Inc., 441 F.2d 627 (2 Cir. 1971); Hatridge v. Aetna Casualty & Surety Co., 415 F.2d 809 (8 Cir. 1969); Note, 81 Harv.L.Rev. 657, 663–664 (1968); *but see* Hymer v. Chai, 407 F.2d 136 (9 Cir. 1969).[20]

## CLASS ACTION

We now consider whether these actions should be given class action treatment, at the outset noting that defendants' counsel has stated that if we were to find subject matter jurisdiction and that plaintiffs have standing, defendants would have no objection to this matter proceeding as a class action.[21]

Plaintiffs' complaint would have us apply Fed.R.Civ.P. 23 to both constitutional and statutory claims. However, in subsequent proceedings, plaintiffs' argu-

---

tection of civil rights." *Cf.* Gomez v. Florida State Employment Service, 417 F.2d 569 (5 Cir. 1969) and McCall v. Shapiro, 416 F.2d 246 (2 Cir. 1969).

20. We *do not overlook the mildly trouble-some question of whether pendent jurisdiction can be asserted to include not only claims but parties as well. The consti-tutional claims herein asserted are direct-ed primarily at defendants Cassi and Lazaro for their alleged noncompliance with Due Process requirements, while the thrust of the statutory claim is against defendant Engelman. However, this prob-lem need not detain us long because the constitutional claim may involve defend-ant Engelman because of his duty under both state and federal law to supervise county welfare boards. See* 42 U.S.C. §§ 602(a) (3), 1382(a) (3); N.J.S.A. 44:10–

3. *Thus, it would not be unreasonable for this Court to conclude that the constitu-tional claim states a cause of action against all defendants. Moreover, in giv-ing expression to the salutary purpose intended to be served by pendent ju-risdiction, it would not be stretching this principle excessively to assert jurisdiction over a defendant who is not a primary party to the jurisdiction granting claim under certain limited circumstances. Cer-tainly, the theme of recent decisions in this Circuit, and of various cases in other Circuits, sustains this conclusion. Accordingly, we adopt it and reach our in-dicated result. See cases cited on page 747, supra.*

21. Hearing of Jan. 21, 1972, transcript at 61.

ments were principally directed to class action treatment for the statutory claim.

The question presented is not without some difficulty. Nonetheless, we are disposed to grant class action treatment to the pendent statutory claim, reserving for future consideration the question of whether the constitutional claim should be similarly treated.

We make the following findings as to the statutory claim proceeding as a class action [Interpace Corp. v. City of Philadelphia, 438 F.2d 401 (3 Cir. 1971)].

Plaintiffs seek to represent all affected recipients of ADC and AABD assistance in the State of New Jersey. Plaintiffs allege that this class exceeds 400,-000 persons. This Court agrees that joinder of all potential members would be impracticable.

██ Questions of law and fact common to members of the proposed class are presented by the statutory claim. The state's admitted noncompliance with the HEW regulation is statewide and affects all welfare recipients in the same manner. Plaintiffs' claims are certainly typical of the class they represent and the issue of noncompliance with Reg. 205.10 predominates over whatever minor factual differences may exist. The fact that plaintiffs seek to represent both ADC and AABD recipients is not troublesome since Reg. 205.10 applies to each in the same manner.[22] Plaintiffs will doubtless fairly and adequately represent class members. They are represented by Legal Services attorneys who have both the expertise and the dedication necessary to press their claims. This latter fact is not disputed by defendants. It is also clear that defendants, by their refusal to implement Reg. 205.10 have "acted or refused to act on grounds generally applicable to the class." Fed.R. Civ.P. 23(b) (2). This Court shall of course continue to scrutinize the details of the class action. Eisen v. Carlisle & Jacquelin, 391 F.2d 555 (2 Cir. 1968).

We are led in part to our decision by the hospitability that this Circuit has shown to class actions seeking to enforce federally created rights. Hackett v. McGuire Brothers, 445 F.2d 442 (3 Cir. 1971); Young v. I. T. T., 438 F.2d 757 (3 Cir. 1971); cf. Hackett v. General Host Corporation, 455 F.2d 618 (3 Cir. 1972) and Epps v. Cortese, 326 F.Supp. 127 (E.D.Pa.1971), prob. juris. noted 402 U.S. 994, 91 S.Ct. 2185, 29 L.Ed.2d 159 (1971).[23]

We also have specific precedent for ordering class action treatment in this matter. In Almenares v. Wyman, *supra*, Chief Judge Friendly dealt with a class action problem virtually indistinguishable from the one herein. His discussion is particularly valuable.

. . . Whether or not the constitutional claims were appropriate for class action treatment, an issue we need not decide, the *Gibbs* test for pendency, requiring a "common nucleus of operative facts," satisfied since plaintiffs and all members of their class share one essential thing in common—their benefits have been or will be terminated, reduced or suspended prior to a State hearing unless relief is afforded. (453 F.2d at 1083–1084)

He notes further that

. . . With respect to a class action under F.R.Civ.P. 23(b) (3), where damages or some other collateral relief requiring examination of collateral facts is required, it could well be an abuse of a trial court's discretion to utilize the principle of pendent jurisdiction to include class claims not otherwise assertable in a federal court even though they arise from the same nucleus of operative facts as the primary claim. (at 1085–1086).

---

22. *See* 45 C.F.R. § 205.10(a).

23. This three-judge court upheld the constitutionality of the Pennsylvania replevin statutes. No class action was allowed because all facts were stipulated and the Court noted that any finding of unconstitutionality of the statutes involved would affect all residents of the state equally. This case was argued in the Supreme Court on November 9, 1971 sub nom. Parham v. Cortese.

He did not find that limitation applicable, however, in the fact situation presented because

> . . . Under the circumstances of this case, determination that plaintiffs are entitled to relief on their pendent claim concerning the invalidity of existing procedures would mean that all other members of the class should receive identical treatment without further inquiry. (at 1085).

Accordingly, class action treatment is hereby allowed at this time as to the pendent statutory claim.

## THREE-JUDGE COURT

■ Defendants assert that the relief here sought by plaintiffs may only be granted by a three-judge court. 28 U.S.C. § 2281.[24] The constitutional claim here is directed at the *application* of state hearing regulations so as to violate Due Process requirements. It is not, nor could it be, directed at the regulations themselves. Thus there is no right to a three-judge court as to this claim under § 2281.

■ On the statutory claim, assuming *arguendo* that its pendent state does not mandate that it be treated like the primary jurisdictional claim, that is, by

trial before a single judge [Spencer v. Kugler, *supra*, 454 F.2d at 839] and treating it as if it had its own jurisdictional base, the three-judge court provisions are not applicable. *Cf.* Rosado v. Wyman, *supra*. Involved here is the Supremacy Clause. *See* Swift v. Wickham, 382 U.S. 111, 122–123, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); Miller v. Anckaitis, 436 F.2d 115 (3 Cir. 1970), cert. denied, 403 U.S. 910, 91 S.Ct. 2203, 29 L.Ed.2d 688 (1971); Like v. Carter, 448 F.2d 798 (8 Cir. 1971), petition for cert. filed, 40 U.S.L.W. 3289 (U.S. Dec. 9, 1971).

As the Second Circuit noted in an analogous situation:

> . . . Neither, of course, are three judges required as to appellant's claim that the state regulation conflicts with the federal provisions which, by virtue of the Supremacy Clause, are controlling.

Johnson v. Harder, *supra*, 438 F.2d at 13. *Cf.* Board of Regents of University of Texas System v. New Left Education Project, 404 U.S. 541, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972); Santiago v. Corporacion de Renovacion, 453 F.2d 794 (1 Cir. 1972).

Accordingly, there is no merit to defendants' claim that the triable issues herein require a three-judge tribunal.[25]

---

24. 28 U.S.C. § 2281 states:

> An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of said statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

25. The right to a three-judge court is to be narrowly construed. Mitchell v. Donovan, 398 U.S. 427, 90 S.Ct. 1763, 26 L.Ed.2d 378 (1970); Allen v. State Board of Elections, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed. 2d 1 (1968); *cf.* Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1940). Notwithstanding this, demands for such courts continue to grow. *Cf.* United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971); Perkins v. Matthews, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971); Goosby v. Osser, 452 F.2d 39 (3 Cir. 1971); Miller v. Anckaitis, 436 F.2d 115 (3 Cir. 1970), cert. denied, 403 U.S. 910, 91 S.Ct. 2203, 29 L.Ed.2d 688 (1971); Johnson v. New York State Education Dept., 449 F.2d 871 (2 Cir. 1971); Dale v. Hahn, 440 F.2d 633 (2 Cir. 1971); Bond v. Dentzer, 325 F.Supp. 1343 (N.D.N.Y. 1971); Ammerman, Three Judge Courts: See How They Run!, 52 F.R.D. 293 (1971). *See* American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts (1969) at 282–335. Some limitation may be in sight because of the proposed Federal Jurisdiction Act of 1971 (S.1876), introduced by Senator Quentin Burdick on May 14, 1971.

PRELIMINARY INJUNCTION

We must first consider the pendent statutory claim, deferring and, if possible, avoiding a decision on the substantial constitutional question presented. California Department of Human Resources Development v. Java, 402 U.S. 121, 124, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971); Wyman v. Rothstein, *supra*, 398 U.S. at 276, 90 S.Ct. 1582; Rosado v. Wyman, *supra*, 397 U.S. at 402, 90 S.Ct. 1207; King v. Smith, *supra*, 392 U.S. at 312 n. 3, 88 S.Ct. 2128.

At the heart of the statutory claim is the undisputed fact that the defendants have refused to adopt and follow HEW's fair hearing regulation, 45 C.F.R. § 205.-10, 36 Fed.Reg. 3034 (1971). Instead, they have continued to follow New Jersey's state regulations, adopted in or about April, 1970, after the *Goldberg* decision came down on March 23, 1970.

Reg. 205.10, fairly summarized, provides that prior to terminations or reductions the administering agency (here the county) must:

(1) mail, at least 15 days prior to the proposed action, a notice which details the reasons for the proposed action; informs the recipient of his right to request a state level fair hearing and of the circumstances under which an agency will continue assistance if a fair hearing is requested. [45 C.F.R. § 205.10(a) (5) (i) (a) and (b)];

(2) if the recipient requests a fair hearing within the notice period, continue assistance until the state agency has determined that the issue is one of state agency policy and not one of fact or judgment

relating to the individual case, including a question of whether state agency rules or policies were correctly applied to the facts of the particular case. [45 C.F.R. § 205.10(a) (5) (iii) (a) (1)];

(3) if the state determines that the issue is one of policy, notify the recipient promptly and in writing that assistance will be discontinued. [45 C.F.R. § 205.10(a) (5) (iii) (a) (2)];

(4) if the state agency determines that the issue is one of fact or judgment, including a question of whether the state agency rules or policies were correctly applied to the facts of the individual case, continue assistance until the fair hearing decision is rendered. [45 C.F.R. § 205.10(a) (5) (iii) (a) (1)];

(5) if a fair hearing is requested, take final action within 60 days from the request for such a hearing except where the recipient requests a delay. [45 C.F.R. 205.10(a) (11)].

The Secretary of HEW caused a precursor of Reg. 205.10 to be published as early as November 30, 1968, inviting comment thereon.[26] The regulation's effective date was thereafter repeatedly postponed as it underwent various changes in response to both comments from interested parties, and to the *Goldberg* decision. When finally circulated in substantially its present form, we are told, it was accompanied by an HEW Memorandum explaining the agency's decision directing a single state-level hearing prior to termination, reduction, or suspension, as follows:[27]

26. The regulation was proposed at 33 Fed. Reg. 17853 (November 30, 1968). The regulation was promulgated at 34 Fed. Reg. 1144 (January 24, 1969) to be effective October 1, 1969. The effective date was postponed to July 1, 1970 at 34 Fed. Reg. 13595 (July 23, 1969). *Goldberg* was decided March 23, 1970. A substantial revision and request for comments was published at 35 Fed.Reg. 8448 (May 29, 1969). The July 1, 1970 effective

date of the regulation was revoked at 35 Fed.Reg. 10591 (June 30, 1970), while HEW considered comments to the May 29, 1970 revisions. The regulation was published in final form at 36 Fed.Reg. 3034 (February 13, 1971) to be effective April 14, 1971.

27. Acting pursuant to the Supreme Court's suggestion in Rosado v. Wyman, *supra*, 397 U.S. at 406–407, 90 S.Ct. 1207, 25

1. Holding one hearing, rather than a local hearing followed by a State hearing, will, in our view, be less costly in time and money.

2. Greater impartiality, objectivity and uniformity in the application of State policies is assured when the hearing is not before the agency that made the decision being appealed.

3. The individual and those appearing on his behalf will be subject to only one hearing.

4. This hearing process is closely akin to that which would be required under the Family Assistance Plan.

5. The State agency should be better able to interpret State policies and to determine whether they were correctly applied to the individual's situation, especially when the claimant challenges the correctness of the local agency's application of those policies.

6. A single hearing can be a means for improving hearing procedures and for shortening the time for the total process which, in some States, now exceeds the Federal standard of 60 days. SRS Program Regulation 10-2(C-3), February 13, 1971. Almenares v. Wyman, *supra*, 453 F.2d 1075 n. 19; Brief of HEW as *amicus curiae* at 7 n. 2.

█ It is the defendants' contention that this regulation is invalid because it is inconsistent with various provisions of the Social Security Act; that it curtails the right of a state to administer welfare programs locally under state supervision; that it penalizes and discriminates against states having locally administered programs (here we note that New Jersey administers its welfare programs through local county agencies, the County welfare boards, which are supervised by the Division of Public Welfare which sets basic policy and establishes regulations which are binding on the county boards). Defendants further contend that Reg. 205.10 creates a dislocation of the local-state relationship in the welfare field; and that it violates the Social Security Act by requiring continuation of assistance through holdings of fair hearings at the state level, after a local determination adverse to the welfare recipient. Superimposed is the complaint that the welfare structure in New Jersey, the underpinnings of which are allegedly shaky, will crack and fall under the predicted added burden imposed by Reg. 205.10.

The defendants do not and could not contend that they have had inadequate time to install a conforming plan. Their failure to do so is not related to lack of time; it is, instead, a result of an expressed intention not to comply.[28]

█ Nor do the defendants dispute the naked proposition that the federal regulation, if valid, is binding upon the state. Lewis v. Martin, *supra*; Boddie v. Wyman, 434 F.2d 1207 (2 Cir. 1970), aff'd mem. 402 U.S. 991, 91 S.Ct. 2168, 29 L.Ed.2d 157 (1971). Defendants, in fact, go so far as to imply that if HEW's regulation is upheld as a valid exercise of the Secretary's power they would have to consider, as an alternative to compliance, abandonment of federal assistance. In any case, it is well settled that a federal agency may prescribe—within the limits of its statutory and constitutional powers—how states receiving its grants-in-aid are to administer state-funded programs. *See* Footnote 9, *supra*.

L.Ed.2d 442, this Court invited HEW to appear herein as *amicus curiae*, and acceptance of this invitation was forthcoming promptly. HEW has now filed a Brief in support of the validity of its fair hearing regulation and the plaintiffs' position that this regulation is binding upon the states, so long as they elect to continue to receive federal funds for their various welfare programs.

28. Defendants took no formal action to oppose Reg. 205.10 until April 20, 1971, 5 days after it became effective. On that day, The Board of Public Welfare, an advisory body, passed at defendant Engelman's request a resolution noting the impossibility of compliance and calling for "the exercise of influence" on HEW and the New Jersey Congressional delegation. Engelman Deposition, at 29-30.

As was said in King v. Smith, *supra*, 392 U.S. at 333 n. 34, 88 S.Ct. at 2141:

> There is of course no question that the Federal Government, unless barred by some controlling constitutional prohibition, may impose the terms and conditions upon which its money allotments to the States shall be disbursed, and that any state law or regulation inconsistent with such federal terms and conditions is to that extent invalid.
> . . .

Finally, defendants do not and could not argue that HEW, when it issued the disputed regulation, was unaware of the fact that states like New Jersey would have to revamp their procedures. *See* HEW Memorandum, p. 16, *supra*; *see* Engelman deposition at 19–20, where he testifies that the problems of New Jersey and other states having county-administered programs were brought to HEW's attention prior to the effective date of Reg. 205.10.

We first examine the breadth and scope of the rule-making power of HEW's Secretary which is here challenged. He is by statute empowered to issue such regulations, consistent with the Social Security Act "as may be necessary to the efficient administration of the functions with which [he] is charged" under the Act. 42 U.S.C. § 1302.[29]

A more plenary great of rule-making power would be difficult to devise.[30] There remains for determination only whether Reg. 205.10 is "consistent" with the Act, which we take to mean "reasonably related to the purposes" of the Act. *See* Thorpe v. Housing Authority, 393 U.S. 268, 280–281, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969), where the Supreme Court, dealing with "substantially the same language" as in § 1302, sustained a Housing and Urban Development regulation, not on the basis of express mention thereof in the relevant statute, but because the regulation was "reasonably related to the purposes of" the enabling legislation, and, in so doing, stated:

> Such broad rule-making powers have been granted to numerous other federal administrative bodies in substantially the same language. See e. g., . . . 42 U.S.C. § 1302 (Department of Health, Education, and Welfare) . . . . (393 U.S. at 277 n. 28, 89 S.Ct. at 523).

The breadth of the rule-making authority of § 1302 is underscored when seen in the perspective of the entire federal statutory scheme of public assistance. The various programs provided for authorize the Secretary of HEW to require, in the welfare field, that each state incorporate in its plan "such methods of administration . . . as are found by the Secretary to be necessary for the proper and efficient operation of the plan . . . ." It is clearly contemplated that in this way the Secretary can, through review and scrutiny of state plans, be instantly apprised of problems in the federally-funded assistance programs and rectify or eliminate troublesome areas in whatever way he, as his expertise may direct him, finds most effective and within the purposes of the public assistance statutory fabric.

We have been cited to no decisional authority striking down an HEW regulation under the Social Security Act, nor have we found any. On the contrary, there is strong support, in fairly recent cases, for sustaining Reg. 205.10 in the

---

29. Defendants do not contend that Reg. 205.10 is not "necessary to the efficient administration of the functions with which [the Secretary] is charged" under the Act. Left as the only issue is whether the regulation is "consistent" with the Act.

30. When *Goldberg*, and its companion case, Wheeler v. Montgomery, *supra*, were decided, Mr. Chief Justice Burger, dissenting, noted that HEW had drafted pretermination hearing regulations (a not dissimilar version of Reg. 205.10), objected to the majority's "legislating" Due Process standards, and stated

> . . . [I] am baffled as to why we should engage in 'legislating' via constitutional fiat when an apparently reasonable result has been accomplished administratively. 397 U.S. at 283, 90 S. Ct. at 1028.

face of the attack mounted by defendants.

In Connecticut State Department of Public Welfare v. Department of HEW, 448 F.2d 209 (2 Cir. 1971), an HEW regulation was sustained which was directed at so-called "earned income disregards." The concerned state agency asserted the state's primary jurisdiction to define "earned income disregards" because of the limited state resources available. The Court, pointing out that the Act was not explicit on the point, stated [448 F.2d at 215]:

> Connecticut, however, has not shown that the Secretary's use of gross income in the HEW regulations is unreasonable or contrary to the Act; it has only demonstrated that its own interpretation of the Act may also be a reasonable one. This is not enough.
>
> . . .

In the same vein is Arizona State Department of Public Welfare v. Department of HEW, 449 F.2d 456 (9 Cir. 1971). The state agency there argued that an HEW regulation defining "residence" (for purposes of continuing to be eligible for public assistance) as including temporary absence with return, or with intent to return, was inconsistent with and violative of the Social Security Act, and hence invalid. There is no definition of "residence" in the Act itself, merely a limitation on the type of residence requirement a state may establish. The Court found the regulation to be valid even though it extended the holding in Shapiro v. Thompson, *supra,* in response to which it had been adopted.

This holding is of particular relevance and significance in the case at bar where defendants argue that Reg. 205.10 extends the *Goldberg* due process standards in a way only a court or legislature might do. In this connection the Ninth Circuit opinion notes [at 468]:

> . . . Arizona errs in concluding, however, that because the regulation creates a remedy broader than the problem to which it was responsive, the regulation is invalid either *pro tanto* or in its entirety. Whatever may have motivated the Secretary to promulgate this regulation, the scope of his rule-making authority under the Social Security Act is limited only by 42 U.S.C. § 1302 and the Constitution.
>
> . . .

In Lewis v. Martin, *supra,* the Supreme Court upheld a regulation designed to eliminate a state presumption of income in AFDC cases from a substitute father or a stepparent. The Supreme Court found "nothing in this regulation to suggest inconsistency with the Act's basic purpose of providing aid to 'needy' children." 397 U.S. at 559, 90 S.Ct. at 1286.

Finally, Reg. 205.10 itself was upheld in Almenares v. Wyman, 334 F.Supp. 512, 521 (S.D.N.Y.1971). The following portion of the opinion is highly relevant [at 521]:

> Essentially, defendant Wyman argues that HEW went beyond its rule-making power because it was implementing the Supreme Court's decision in Goldberg v. Kelly, *supra,* rather than the Social Security Act. The Court finds this position to be untenable. Even where a statute does not affirmatively indicate an intent to establish a regulation such as the one in question, if the grant of authority is sufficiently broad, the regulation will be considered to be authorized. Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965). Furthermore it is well recognized that deference must be given to the regulations promulgated by the agency charged with administering a statute. Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); Conn. State Dept. of Public Welfare v. HEW, 448 F.2d 209 (2d Cir. 1971); Boddie v. Wyman, 434 F.2d 1207 (2d Cir. 1970), *aff'd mem.,* 402 U.S. 991, 91 S.Ct. 2168, 29 L.Ed.2d 157 (1971). . . .

Thereafter, the Court of Appeals for the Second Circuit affirmed and Chief

Judge Friendly in pertinent part stated [453 F.2d at 1087–1088]:

. . . The State's general position is that HEW has no legitimate concern with the distribution of functions between the State and its subdivisions in the administration of federally assisted programs so long as the right results are achieved. . . . It was competent for HEW to determine that the objectives of the federally assisted programs could be better attained by a single state hearing prior to the taking of action rather than having such a hearing conducted by a subdivision of the state subject to review in a state hearing after action had been taken. (footnotes omitted)

The foregoing quotation from *Almenares* is also pertinent to defendants' claim that Reg. 205.10 discriminates against states like New Jersey and is thus "inconsistent" with 42 U.S.C. § 602 (a) (3) of the Social Security Act. This provision reads:

A State plan for aid and services to needy families with children must . . . (3) either provide for the establishment or designation of a single State agency to administer the plan, or provide *for the establishment or designation of a single State agency to supervise the administration of the plan.* (emphasis supplied).

Defendants first find Congressional encouragement, from the underlined portion of this statute, for adoption of New Jersey's county-administered state-supervised plan, and then argue that Reg. 205.10 conflicts with that concept by lodging determinative hearing responsibility at the state, and not county, level.

Ingenious as this contention may be, it is backed neither by authority nor statutory analysis, and we must reject it.

We are persuaded to an opposite view by powerful factors. The cited clause of § 602(a) (3) expressly preserves for the state agency the power "to supervise" county administration.

Moreover, § 602(a) (3) has nothing to do with hearings; but § 602(a) (4) does. It requires that a fair hearing before a state agency be provided, upon request, to one whose ADC assistance is terminated. Obviously Congress did not intend by silence in one subdivision to veto, or even impair, the express provisions of the next succeeding subdivision. Nor did the states thus construe this statute. Instead, until *Goldberg*, they all afforded a state-level post-termination hearing. None, to our knowledge (and the record clearly reflects New Jersey did not), construed subdivision (3) as requiring a hearing at the county level, even where state-supervised plans administered by local agencies were in existence. After *Goldberg*, certain states like New Jersey made their own decision to add a hearing at the county level and, pursuant to *Goldberg*, made it a pretermination hearing. What defendants overlook, however, is that § 602(a) (3) and (4) had not changed; it was New Jersey, and states having county-administered state-supervised plans, which had changed—by adding a local hearing, while retaining, as they were compelled by statute to do, a state-level hearing. How then can they now be heard to complain?

We note as well that Reg. 205.10 does not by its terms distinguish between state-supervised and state-administered plans. It treats them both the same. *See*, for example, the 60-day requirement for rendering a fair hearing decision and the 15-day notice requirement. Its purpose is obvious: to simplify hearing procedures for both the state and the recipient. *See* HEW Memorandum, p. 750, *supra;* and HEW Brief *amicus curiae*, at 9–12.

As we have stated, § 603(a) (3) does not require a county hearing. More than that, Due Process does not either. Justice Brennan so stated in *Goldberg:*

Due process does not, of course, require two hearings. If, for example, a State simply wishes to continue benefits until after a "fair" hearing there will be no need for a preliminary hearing. (397 U.S. at 267 n. 14, 90 S.Ct. at 1020).

Of course, it may well be that implementation of Reg. 205.10 will, initially at least, impose certain inconveniences and even added expense upon New Jersey, as the county-level hearing structure is dismantled, or, if retained, continues no longer to be the determinative hearing stage. This, however, does not amount to a discrimination constituted by an inconsistency with § 602(a) (3). The injury, if any, to the state is a self-inflicted one, brought about by New Jersey's reaction solely to *Goldberg*, when it was well known that HEW was going to implement *Goldberg* by another means, a pretermination state-level hearing.

Defendants also argue that Reg. 205.10 is void because it goes beyond *Goldberg's* requirements, in requiring payments until state-level action. They overlook that the Supreme Court made it clear that it was establishing only "minimum procedural safeguards" and, as already stated, that Due Process could as well be satisfied by continuation of payments until a decision at the state fair hearing level. 397 U.S. at 267 n. 14, 90 S.Ct. 1011.

Defendants next argue that disaster will strike the state's welfare program if Reg. 205.10 is followed, in that the predicted added costs will be an impossible burden for the state to bear. More specifically, they claim that New Jersey is incapable of processing the fair hearing requests Reg. 205.10 will bring to the state level. (Engelman Affidavit, ¶ 16). But this argument is only as sound as the assumption upon which it rests: that 9,980 requests monthly for fair hearings will be made by recipients entitled to continued assistance until a hearing decision. This figure is arrived at by taking monthly the average number of cases of termination of assistance (except by death) and reduction in assistance. (Engelman Affidavit, ¶ 13). Defendants then make the further assump-

tions: (1) a majority, if not all, of those entitled to a fair hearing will make a timely request for one; (2) that in every case the issue will be one of fact or judgment relating to the individual involved, and not one of agency policy; and (3) that all of the fair hearing requests will go all the way to a hearing decision and not be disposed of by some other means. These assumptions are not based on fact. According to HEW records, in the calendar year 1970 there were only 640 fair hearing requests received in New Jersey, of which 570 were disposed of short of final determination, and only 185 required a formal hearing decision.[31] This affords no basis for projecting that the number of yearly fair hearing decisions resulting from termination or reduction of assistance will jump from 185 to 119,760 (12 x 9,980 monthly), with the implementation of Reg. 205.10.

Other predictions by Mr. Engelman of the staggering economic impact of Reg. 205.10 upon New Jersey's welfare scheme were similarly lacking in factual support. Disappointingly, even at hearing, when defendants called as witnesses from California (which complies with Reg. 205.10) and North Carolina (which does not) highly-placed state welfare officials, Mr. Engelman, who also testified, indulged more in speculation and conjecture than in fact. He had been requested on his deposition to produce for defendants' counsel a variety of data. Even at the hearing, several months after the deposition, he did not have the requested information available.[32]

Accordingly, even if it should be the law that our ruling on the proposition before us must reflect a consideration of the economic impact of Reg. 205.10 on the state [*see* Shapiro v. Thompson, *supra;* Rivera v. Dunn, 329 F.Supp. 554 (D.Conn.1971), aff'd mem. 404 U.S. 1054, 92 S.Ct. 742, 30 L.Ed.2d 743 (U.S. Jan.

---

31. Statistical materials are from the HEW National Center for Social Statistics.

32. New Jersey's attitude is to be contrasted with the action of welfare officials in New York, who commenced suit against

HEW to declare the regulation void. State of New York v. Richardson, 71 Civ. 406 (N.D.N.Y. Sept. 2, 1971). A motion to dismiss has been filed by defendants and will be heard shortly.

24, 1972)], we are not persuaded that New Jersey cannot reasonably conform, for the reasons asserted, to the requirements of Reg. 205.10.

█ Based upon the foregoing, and the parties having been afforded an opportunity to submit affidavits, and to present testimony at hearing, we determine: that plaintiffs have established a strong likelihood that they will prevail on the merits at final hearing; that plaintiffs will, absent preliminary injunctive relief, suffer irreparable injury (see Goldberg, supra); that, balancing the interests involved, the harm to the defendants' interests by the granting of a preliminary injunction is outweighed by that which will be sustained by plaintiffs if such relief is withheld; and that the public interest is in favor of granting the relief thus sought. Winkleman v. New York Stock Exchange, 445 F.2d 786, 789 (3 Cir. 1971); A. L. K. Corp. v. Columbia Pictures Industries, Inc., 440 F.2d 761, 763 (3 Cir. 1971); Mixing Equipment Co. v. Philadelphia Gear, Inc., 436 F.2d 1308, 1315 (3 Cir. 1971); U. S. Steel Corporation v. Fraternal Ass'n of Steelhaulers, 431 F.2d 1046, 1048 (3 Cir. 1970); Kontes Glass Co. v. Lab Glass Co., 373 F.2d 319, 320 (3 Cir. 1967); Nelson v. Miller, 373 F.2d 474, 477 (3 Cir. 1967); Ikirt v. Lee National Corp., 358 F.2d 726, 727 (3 Cir. 1966) Joseph Bancroft & Sons v. Shelley Knitting Mills, Inc., 268 F.2d 569, 573–574 (3 Cir. 1959); Warner Bros. Pictures, Inc. v. Gittone, 110 F.2d 292, 293 (3 Cir. 1940).

Accordingly, plaintiffs' prayer for a preliminary injunction is granted.

Finally, defendants' motion to file and serve a third-party complaint against HEW is denied. Having upheld the validity of Reg. 205.10, we see no need for HEW to be added as a party to this action.

The foregoing constitutes this Court's findings of fact and conclusions of law under F.R.Civ.P. 52(a). See Mayo v. Lakeland Highlands Canning Co., 309 U.S. 310, 316, 60 S.Ct. 517, 84 L.Ed. 774 (1940).

It is hereby ordered that defendant Engelman, his successors in office, agents, employees, and those persons in active concert with him, including but not limited to officials and employees of county welfare boards administering ADC and AABD programs, having actual notice of this order, and defendants Cassi and Lazaro, their successors in office, agents, employees, and those persons in active concert with them, are restrained pendente lite from terminating, suspending, or reducing public assistance benefits under the federally assisted programs of Aid to Dependent Children (also known as Aid to Families with Dependent Children) and Aid to the Aged, Blind, and Disabled until:

1(a) an opportunity is afforded the recipients for a fair hearing comporting with the provisions of 45 C.F.R. § 205.10, 36 Fed.Reg. 3034 (1971); and

(b) this Court determines that Mr. Engelman or his successor in office has promulgated regulations implementing § 205.10; and

2 Mr. Engelman or his successor in office has developed a suitable method to monitor local compliance; and

It is further ordered that defendants Engelman, Cassi and Lazaro, their successors in office, agents, and employees, and those persons in active concert with them, including but not limited to officials and employees of county welfare boards, to immediately resume full assistance for all recipients under the ADC and AABD programs who have had their assistance reduced, terminated, or suspended since April 14, 1971, and have made a timely request for a fair hearing from the New Jersey Department of Institutions and Agencies, Division of Public Welfare, and who have not yet been given a fair hearing, or, if given such a hearing, have not received a decision thereon; and

It is further ordered that defendant Engelman serve copies of this preliminary injunction by registered mail, return receipt requested, to the heads of all County Welfare Directors within seventy-two (72) hours from the date of filing of this opinion; and

It is further ordered that defendants' motions are denied, except, that as to the plaintiff Elassar, defendants' motion to dismiss for lack of standing is denied (*see* p. 744, *supra*) but with leave to renew as the record herein is further developed.